Claus Wickstrom, Appellee, v. Ringling Bros., Barnum and Bailey Combined Shows, Inc., Appellant.

Gen. No. 41,597.

Opinion filed March 18, 1942.

BENNETT & COLBACH and MOSES, KENNEDY, STEIN & BACHRACH, all of Chicago, for appellant; ERNEST C. RENIFF, HERBERT H. KENNEDY and ROBERT M. WOOD, all of Chicago, of counsel.

Francis J. Gariepy and Charles E. Mallon, both of Chicago, for appellee.

Per Curiam.

This is an appeal prosecuted by the defendant from a judgment for $6,500 entered by the court (upon a remittitur of $3,500 entered by plaintiff) upon a jury verdict in the sum of $10,000, in a personal injury action.

The complaint alleged in substance that on July 23, 1939, the defendant was engaged in conducting a circus performance; that plaintiff attended this circus, paid an admission, and was directed to occupy a seat in the general admission temporary grandstand at the south end of the main tent; that at all times the plaintiff was in the exercise of due care and caution for his own safety; that it was the duty of the defendant (1) "to furnish plaintiff a reasonably safe means of approach to secure a seat in said stand," and (2) "to furnish plaintiff a reasonably safe place to sit in order to view said circus performance"; but that the defendant notwithstanding this duty negligently, carelessly and improperly (1) "Failed to provide plaintiff a reasonably safe means of approach to secure a seat in said stand"; (2) failed "to provide a reasonably safe place to sit"; (3) "maintained temporary stands for plaintiff and others to sit without providing any footboards or other suitable means to enable them to get to a seat in said stands"; and (4) "directed and required plaintiff to change his seat at said performance without providing any reasonably safe means to secure another seat."

It is further alleged that while plaintiff was in the act of securing a seat in the upper part of the general admission temporary grandstands, the plaintiff was caused to and did fall through the temporary stands to the ground by means of said negligent, careless and improper acts aforementioned, and sustained certain injuries.

The defendant's answer denied that any of the alleged injuries to plaintiff resulted from any of the alleged negligent, careless or improper acts set forth in the complaint, and further denied that plaintiff was in the exercise of due care and caution for his own safety at the time of the alleged accident.

From the facts called to our attention it appears that on the afternoon of July 23, 1939, at 2: 00 p.m., the plaintiff, a man 56 years old, employed 27 years with the Chicago Surface Lines, attended a circus performance given by defendant just south of Soldier's Field in Chicago. Plaintiff's health was good and he attended the circus alone, purchasing a general admission ticket for $1.10 to the main performance in the big tent. This main tent was about a block long and a block wide, and all the shows went on in the center of the tent. The reserved seats were in the middle of the tent on either side of the three rings. The general admission seats were at the south end of the main tent. When he got there, the usher directed him to take a seat about ten boards up. Plaintiff walked up about ten boards and sat down near the aisle, the aisles being marked by white lines painted on the boards. The boards, or planks, making up the seats in the bleachers were about six to eight inches in width and about two feet apart. The elevation from the lower seat to the next seat above was about eight or ten inches, with a space of about two feet between the seats. When plaintiff sat down on the tenth row where he had been told to sit by the usher he was approximately 20 feet above the ground. When he sat down, there was no one in the seat below him and he put his feet on the board below, believing that to be the footboard. After sitting there for about ten minutes, an usher came and told him to move over. He put his hands to either side of his body on the board on which he was sitting and, keeping his feet on

the board below, slid over "nice and easy" two or three feet. About ten minutes later, the usher came again and told plaintiff to move over farther to his right. In the meantime, the usher had filled the board below with people, and plaintiff had to take his feet off, leaving them hanging in the air between the board on which he was sitting and the board below. This time plaintiff moved along in the same manner as the first time and put his hands on the boards, but lost his balance and slipped in between the boards, falling to the ground and thus sustaining injuries. After he fell, an usher came and took him to the doctor on the premises, who examined him and then took plaintiff and gave him a seat in the reserved seat section. Here there were regular folding chairs with a wooden platform underneath and no open space between the boards. The pain in his back became so intense that plaintiff had to leave the show before it was over and returned to his home. The next morning his family doctor was called, and plaintiff was taken to St. George's Hospital where X-rays were taken, which showed compression fractures of the 1st, 2nd, 4th and 5th lumbar vertebrae. Plaintiff was placed in a body cast which was kept on until August 19, 1939. He remained at home until October 24, 1939, when he returned to work part time, and he was still working only part time on the date of the trial because his back still hurt him. He could not straighten his back, and had a 10 per cent to 15 per cent restriction of motion in his back which his doctor considered permanent.

The defendant suggests upon the facts in evidence that no duty existed to protect a patron of a circus against all hazards; that the patron is not relieved of all duty towards himself for his own safety, and that, to the extent that the duty of self-protection rests upon the patron, the duty of the proprietor of a circus is reduced. It is further urged that the extent of these

relative duties depends on many factors involving the capacity and opportunity of the proprietor to protect the patron and the capacity and opportunity of the patron to protect himself.

The defendant goes on to argue this phase of the case and says that in the instant case one is confronted with the relative duties of persons *sui juris* and equally cognizant of all the hazards of the situation in which the plaintiff has placed himself by his voluntary act, and that neither the plaintiff nor defendant have misled the other. That this is not a case where an invitor has superior knowledge of some hazard and has failed to guard or warn an inexperienced invitee against it. It is further stated that it is not a case where there is some defect in the condition of the premises of which the invitor alone had knowledge. The evidence discloses that the plaintiff was not obligated to sit or remain in the bleachers since other seats with backs and more comfortable foot rests were provided at a slightly higher charge. It is contended that defendant discharged his full duty to the plaintiff in safeguarding him from any danger which might have existed in connection with the manner in which the bleachers were constructed by providing reserved seats where the plaintiff might have sat had he so desired and leaving the choice to the plaintiff between these seats, even at increased prices, and the bleacher seats at the general admission charge. This is not altogether a fair argument that plaintiff could have fully protected himself by taking the opportunity to obtain reserved seats, at increased prices, which were more fully protected and not subject to the dangers of the bleacher seats which were to be used by the patrons at the general admission charge. The sole questions as we understand the rule, is whether the defendant was guilty of negligence in failing to provide the plaintiff a reasonably safe place to sit, whether the

defendant negligently maintained temporary stands for plaintiff to sit in without providing any footboard or other safeguard, and whether defendant negligently directed and required plaintiff to change his seat at the performance without providing any reasonably safe means to secure another seat. These questions were all proper to be submitted to the jury under the evidence in the case.

When we consider the evidence in this case, we find that the plaintiff was directed by the usher to take a seat in the tenth row of the so-called bleacher boards. Plaintiff walked up about ten boards and sat down near the aisle. While sitting in this seat about 10 rows up, the plaintiff was about 20 feet above the ground. The boards which were used for seats were six inches wide, and each board was about 10 inches above the other. The space between the boards was estimated at two feet.

At the time plaintiff took his first seat, there was no one in the seat below him, and he put his feet on the boards below, believing this to be the footboard, nothing appearing to indicate that no footboards were provided upon which to rest his feet. It appears from the record that plaintiff had never seen this circus and did not know what kinds of seats there were before he entered the circus. After plaintiff had been seated for about ten minutes, an usher came and told him to move over. Plaintiff put his hands to either side of his body on the board on which he was sitting and keeping his feet on the board below, slid over two or three feet. However, in a few minutes the usher came again and told plaintiff to move over farther to the right. In the meantime the usher had filled the board below with people, and plaintiff had to take his feet off, leaving them hanging in the air between the board he was sitting on and the board below. From the record it appears that this was the first time

plaintiff realized that he would have no footboard upon which to rest his feet. It was thus, while his feet were hanging free in the air, that he was directed by an usher to move over for the second time. Plaintiff moved along as he did the first time and slid over by placing both his hands flat on top of the board on which he was sitting. He pulled with his right hand and pushed with his left. While thus moving over, plaintiff lost his balance and fell between the boards to the ground below. He fell on his back and, as we have heretofore indicated in this opinion, was examined by a doctor on the premises and then given a seat in the reserved seat section. As a result of the fall the pain became so severe that plaintiff had to leave the show before it was over. X-rays were taken which showed compression fractures of the 1st, 2nd, 4th and 5th lumbar vertebrae.

There was, therefore, submitted to the jury the facts that plaintiff was a paid patron; that he was told where to sit by defendant's ushers; that the board on which he sat was six inches wide; that there was no footboard between the rows of seats; that the board which plaintiff originally thought was a footboard and used as such, was filled with other patrons after plaintiff had been seated for some time; that when plaintiff fell while moving over the second time his feet were hanging in the air; that when he fell it was not during any voluntary change of seats on his part but was upon the direction of defendant's usher; and that there was an open space of two feet, through which plaintiff fell. This would, therefore, seem to be a question of fact as to whether the plaintiff was in the exercise of due care for his own safety and as to whether defendant was negligent in respect to the condition as appeared, considering the number of patrons present. Surely the plaintiff was not guilty of contributory negligence from anything which we find from this record.

When we come to apply the law to the facts of this case, we find in the case of *Schenkl v. Sheffield Theatre Co.*, 291 Ill. App. 603 (Abst.), that it was said by the court on matters pertaining to the duty of an operator of a place of public entertainment, as follows:

"Applying this rule to the facts of this case, we do not entertain a doubt that the court did not err in refusing at the close of the evidence to grant the motion of the defendants for an instructed verdict in their behalf. Considering (as we must in passing on such a motion) the evidence in the light most favorable to plaintiff with all inferences to be drawn therefrom, we think the jury could reasonably find that defendants were negligent with respect to one or more of the matters charged in the first three counts submitted to the jury; that plaintiff was in the exercise of due care for her own safety, and that the negligence of defendants was the direct and proximate cause of the injuries which plaintiff received at that time." Applying the rule as adopted by this court, it would seem that plaintiff was in the exercise of due care for his own safety and that it is a question of fact whether the defendant was negligent in building these bleachers and failing to provide for a foot rest and in leaving an open space of two feet between the bleacher boards and directing the plaintiff to move over causing him to lose his balance and fall as we have indicated, to the ground below, thus sustaining the injuries complained of.

A suggestion is offered by plaintiff's brief that, whether there were reserved seats or not, the defendant still owed a duty of reasonable care toward those occupying the general admission seats. They were on the premises at the invitation of defendant; they had paid their $1.10 for their seats; and they, too, just as reserved seat patrons, were entitled to a safe place in which to sit in order to view the performance. To furnish a reasonably safe place to sit it was the duty of defendant to supply the patrons with a foot rest so

that they could go to and from their seats on these bleachers and to change seats if necessary without endangering their safety.

There is another contention called to our attention by defendant that the plaintiff was guilty of contributory negligence as a matter of law. A rather interesting suggestion is offered that either the negligent manner in which the plaintiff conducted himself in changing his position from the seat where he had been sitting or the actions of other patrons in moving against or sitting alongside of the plaintiff in the same row, was the independent act which proximately caused this accident. So far as we can determine, there was nothing in the evidence to indicate that the actions of other patrons was in any way responsible for causing plaintiff to fall. The thing that caused him to fall was the request of the usher that he move, and in moving over the plaintiff was caused to fall between the bleachers. The accident was caused by the construction of these bleacher seats and the open space between the seats which permitted plaintiff to fall through for want of foot rests, in making the change as requested by the usher. However, it appears that the question of plaintiff's contributory negligence under the facts in the record was properly submitted to the jury as a question of fact. There is nothing in the record to make it a question of law, it only becoming a question of law when it can properly be said that all reasonable minds would reach the conclusion under the facts stated that such facts did not establish due care and caution on the part of the plaintiff. (*Thomas v. Buchanan*, 357 Ill. 270; *Hill v. Richardson*, 281 Ill. App. 75.)

A further contention made is that the trial court erred in refusing to permit the defendant to introduce evidence that the seats in question were the standard type of seats used by circuses as general admission seats and that the same had been inspected and approved by a municipal inspector. The question of im-

portance here is whether defendant had exercised reasonable care in providing plaintiff a safe place to sit. Of course, it is the established rule that the defendant owed to plaintiff the duty of furnishing seats which were reasonably safe for the purpose for which they were intended and the purpose for which they were likely to be used by the spectators. Under the law, reasonable care is the proper standard. The question of whether the seats used were of the standard type used by circuses as general admission seats would not prove ordinary or reasonable care under the facts of a particular circus or the circumstances surrounding a particular case.

The defendant raises the other question as to whether the court erred in excluding testimony that the seats in question had been inspected and approved by a park district employee. As suggested, there is some force to the contention of plaintiff that the approval of the defendant's witness, from his inspection of the seats, was simply an expression of his own personal opinion as to their safety. It does not appear that he was guided by any ordinance or building code or specifications, nor was it shown what kind of inspection he had made before he approved them. Under the circumstances, the court was fully justified in sustaining the objection of plaintiff to the admissibility of his testimony as an expert witness.

There are objections, made to the admissibility of certain evidence of the plaintiff, but we find no such erroneous ruling in this regard as would justify the reversal of this cause. We have given it careful consideration and the authorities submitted by the parties have been studied. We have reached the conclusion that there was no error which would justify the reversal of the judgment, and are satisfied that the judgment for plaintiff be affirmed.

*Judgment affirmed.*

PER CURIAM.