**WITHERSPOON, Plaintiff-Appellant, v. HAFT et,**

**Defendants-Appellees.**

Ohio Appeals, Second District, Franklin County.

No. 4574.   Decided June 21, 1951.

Herbert & Dombey, Herbert, of Counsel, Columbus, for plaintiff-appellant.

Wright, Harlor, Purpus, Morris & Arnold, Morris, of Counsel, Columbus, for defendants-appellees.

## OPINION

By THE COURT.

This is an appeal on questions of law from a judgment of the Common Pleas Court on a directed verdict for the defendants at the conclusion of a trial in which the parties introduced all of their evidence. Issues were drawn on the third amended petition and separate answer of each defendant.

The action was for damages for personal injuries suffered by plaintiff, an invitee, of the Grandview High School at a football game played between Grandview High and Bexley High Schools on the night of October 23, 1947. The plaintiff having purchased a ticket to the football game took a seat in temporary bleachers owned by defendant, Al Haft, and erected under the supervision of defendant, A. R. Turner. The bleachers, 15 rows high, were erected on the east side of the football field and the plaintiff was seated on the last seat to the south on the top row of the bleachers. The petition avers, which plaintiff's evidence supported, that at an exciting moment in the game "the crowd in said bleachers, including those spectators seated to the right of plaintiff and on the same board or timber as plaintiff, leaped to its feet; plaintiff was just about to arise when the timber upon which he was seated being then and there insecurely fastened and installed was forced backward and off the tread upon which it rested, throwing the plaintiff off of his balance and over backward, causing him to fall and striking the ends of the timber left under said bleachers."

The specific charges of negligence were:

(1) The board upon which plaintiff and others were seated was not securely fastened to the tread or notch of the supporting timber upon which it rested.

(2) Defendants knew, or with the exercise of reasonable care, would have known that said board or timber so insecurely fastened would be loosened and caused to fall and injure plaintiff.

The petition further avers that the defendants had specific notice of the insecure fastening of the top plank of the bleachers. The defendants answered by general denials.

Plaintiff, having introduced evidence showing the manner of construction of the bleachers and of the fall of plaintiff, rested. Thereafter his case was reopened and he offered further testimony from athletic directors of various high schools respecting their experience in the use of bleachers of the same type as those involved in the accident of plaintiff. At the conclusion of plaintiff's case, defendant, Haft, moved that he be dismissed as a party defendant and both defendants moved for a directed verdict which motions were overruled. The defendants then introduced testimony, at great length, of athletic directors of high schools and colleges and defendant Haft and others, among whom was a representative of the company which manufactured the bleachers in question, the gist of which was that throughout the many years that the same type of bleachers had been in

extensive use no instances had been brought to the attention of the witnesses where the seating planks had slipped out of the metal brackets in which they laid. At the conclusion of the whole case the defendants moved for a directed verdict on the grounds that the facts established do not show any liability on the part of the defendants. The Court sustained this motion and directed the verdict.

The trial judge relied upon **Englehardt v. Phillips, 136 Oh St 73,** and particularly upon the second syllabus thereof and the language of Judge Hart at page 78 of the opinion:
"Until specific conduct involving such unreasonable risk to the plaintiff is made manifest by some evidence, there is no issue to submit to the jury."

The trial judge added:
"In other words, where there is an entire absence of any difficulty arising from the use of a bleacher of this type, and in the further fact that the evidence is to the contrary that no such accident had ever taken place, it is the opinion of the Court that a reasonable conclusion would be that they had a right to believe that these bleachers were reasonably safe."

The jury returned the verdict, judgment was entered thereon and motion for new trial filed and overruled.

Appellant assigns eight grounds of error. The first, second, third, fifth, and sixth of which are based upon the action of the trial judge in directing the verdict for the defendants. The fourth is error in refusing to permit plaintiff leave to amend the third amended petition by charging negligence in the failure of defendants to place guard rails back of the upper row of seats on the bleachers. Without comment we hold that this assignment of error is not well made because the trial judge did not abuse his discretion in refusing the amendment.

The eighth assignment of error is directed to repeated use of leading questions by counsel for appellants on cross-examination. This assignment is not well made nor do any of the other errors assigned require attention save those relating to the directed verdict.

The law controlling the right and duty of the trial judge to direct a verdict is discussed in several Ohio cases. **Laub Baking Co. v. Middleton, 118 Oh St 106; Hamden Lodge v. Ohio Fuel Gas Co. 127 Oh St 469,** and particularly the third and fourth syllabi of the latter case.

Third:
"Upon motion to direct a verdict the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. But if upon any essential

issue, after giving the evidence such favorable construction, reasonable minds can come to but one conclusion and that conclusion is adverse to such party, the judge should direct a verdict against him.

Fourth:

"Where from the evidence reasonable minds may reach different conclusions upon any question of fact, such question of fact is for the jury. The test is not whether the trial judge would set aside a verdict on the weight of the evidence."

In discussing the evidence, therefore, we given it the most favorable interpretation in behalf of the plaintiff.

Two photographs of a section of the bleachers involved in this case is found in the record. It is not necessary to our narrow question to consider any aspect of the construction of the bleachers other than that which pertains to the seating planks and the manner in which they were held in place and particularly the top plank whereon plaintiff was seated. It is manifest that there was a hazard to one seated on the top plank of the bleachers not found in any other row of seats for the reason that should any other plank be removed an occupant, in probability, would not fall because he would be protected by seats or footboards above him. If the top planks on these bleachers were insecure it would not require extensive measures to correct the condition because there were only two planks to be considered.

It develops that the seating planks were placed in seat irons which were at the bottom nine and one-half inches wide. At the ends of the bottom piece and connected to it were metal ears one inch high. The seat board according to the testimony of defendant Turner was one and five-eighths inches thick, nine and one-half to ten inches wide and fifteen to eighteen feet long. The first board was laid into the metal brackets, the brackets being fixed to risers which rested on horses which were three and one-half to four feet apart. Thus, the first board laid would lie level on each of four metal brackets. In the bleachers shown, the defendants' Exhibit 2, the first seating board laid at the top would rest on the level in each of the four brackets. The next board, to the south, the one upon which the plaintiff was seated was then placed on top of the first board and extended over and onto three other brackets. This board would not be level but would incline the thickness of the board upon which it rested, one and five-eighths inches, through its length and over the last bracket to the south.

There is some difference in testimony as to the height of the end of the metal bracket varying from one to one and one-

half inches. We have examined and measured the bracket which was exhibited to the Court in oral argument and find that the height of the ends of the bracket on the inside is one inch. If the testimony of Mr. Turner, a defendant, is correct, the first board laid in the brackets extends five-eighths of an inch above the ends of the bracket and the board resting upon it and upon which the plaintiff was seated would be, where it laps, above and free from the ends of the bracket. At the end where this latter board lapped there would be nothing to prevent its lateral movement except the upper ends of the three brackets to the south end of the bleachers and there would be little to prevent its up and down movement, unless it was held down by persons seated upon it.

One witness, Mr. Salzgeber, testified that the brackets holding the upper board upon which plaintiff sat bent out a little to the east. Another witness, Mr. Boyd, said that the brackets on the top board were old and worn, had rounded surface and were smooth. Another witness testified that the top board did not rest level on the metal bracket at the south end of the bleacher, as appears in defendant's photograph, Exhibit 1. Another witness, Mr. Cresser, who was seated on the top board said that there were circular humps on the end of the bracket to keep the board in; that the humps turned away from the bracket and that there was nothing to keep the board from being raised. The representative of the company which manufactured the bleachers said that at a game where people are jumping up and down the seat board could be kicked or pushed out of place.

Four witnesses, in addition to the plaintiff, testified as to how the accident occurred from which it could be concluded that when all the occupants on the top plank arose to watch an exciting play in the game in some manner force was exerted against the board and it was caused to leave its place in the brackets. All of these witnesses, but one, say the board fell to the ground. All of those seated on this board fell to the ground except one who was suspended head down and later lifted up to safety.

It is our judgment that upon the testimony which we have mentioned, the plaintiff made a prima facie case as to the negligence set out in the petition. The defendant knew of the construction of the bleachers, the size and dimension of the brackets and the manner in which the seating boards rested in these brackets. Upon the testimony actual notice of the condition set up in the petition appeared. Constructive notice did not have to be shown and whether it was

negligence to furnish that type of equipment was a factual question for the jury. However, in addition to this testimony the plaintiff offered other witnesses who had experience with the type of bleachers here involved. In instances they had taken precaution to make the seating boards more firm in place by wiring and to make them safer by railing around the ends and around the top. In most instances these bleachers were not as high as the ones in question and most of them were left in place for a longer period of time. Defendants insist that they were of a permanent character and that methods adopted to more firmly fix the seats should not be considered with respect to the temporary type of bleacher here involved. One witness testifying as to the insecurity of the seat boards said that they had to be wired and that the wind would blow them away.

We believe that the testimony which was probative of the insecurity of the seating boards in bleachers of like type to those under consideration was competent as it reflected upon the safety for plaintiff and those who occupied the seats. The mere fact that the bleachers were to be used for temporary purposes only did not lessen the obligation of the defendants to exercise ordinary care to provide reasonably safe seating arrangements for occupants of the bleachers.

In Bent v. Jonet (Wis.) 252 N. W. 290, the Court had under consideration the question whether temporary wooded bleachers erected for observing football games was a "public building" under a safety statute of that state. It held that such bleachers were public buildings. It was urged that the temporary character of the bleacher structure precluded it being a public building. The Court pointed out that the objective of the statute is to insure safety by the broadest sort of provisions with respect to the kind of places affected and said:

"The person resorting to a public place is quite apt, if not more so, to be injured by the collapse or improper design of a temporary structure as that of a permanent one. No reason is perceived why there should be a distinction between these types of structure."

The action in the cited case was for personal injuries sustained by a spectator at a football game when he fell from the top of temporary wooden bleachers which as described in the opinion was almost identical in structure to those in the instant case. The accident in Bent v. Jonet occurred in September, 1931, and the opinion in the Supreme Court of Wisconsin was released in January, 1934.

On the question of the specific notice to defendants as pleaded, Mr. Young, Principal of West High School, testified that he had rented bleachers like those here under con-

sideration in 1947 and that as a safety factor he suggested railing going up the steps and in back of them. The date of this occurrence is not certain whether it was before or after the fall of Mr. Witherspoon. However, in our judgment, there is ample testimony from which the jury could have inferred that the defect pleaded, if it was a defect, was of such a character as that it could have been recognized by either one or both of the defendants in their experience with the bleachers. Thus, the evidence would have supported a finding of actual notice to defendants of the inadequate character of the metal brackets to prevent movement of the seat boards. The trial judge may have adopted this view of the evidence as he overruled the defendant's motion for a directed verdict at the close of plaintiff's case. Mr. Haft testified that the bleachers were regularly inspected at his sports arena, Haft's Acre, in Columbus and Mr. Turner testified that the bleachers were inspected after they were erected at the Grandview athletic field. The trial judge held that the testimony on behalf of the defendants, to which we have heretofore alluded, completely relieved defendants from any imputation of negligence; that as reasonable men the defendants exercised due care in setting up the bleachers as they were erected without any further precautionary measures to prevent the top seating board from being moved from the brackets in which it rested. The testimony upon which the defendant and the trial judge relied was probative on the question whether ordinary care had been observed by the defendants in the placing and erecting of the bleachers but it would not furnish a conclusive test of negligence. **Rebarin v. Kessler, 78 Oh Ap 289, 70 N. E. (2d) 107; Ault v. Hall, 119 Oh St 422, 164 N. E. 518, 60 A. L. R. 128.** These cases are also authority for the proposition that methods employed in any trade, business or profession however long continued cannot avail to establish as safe in law, that which is dangerous in fact. To like effect is **Wiley v. Wharton, 68 Oh Ap 345, 41 N. E. (2d) 255.**

There was also testimony as to other methods of securing the seating boards to the piece upon which they rested either by laying them end to end and screwing them to the piece of material under them or by metal strips over the boards where they lapped. The company which manufactured the bleachers under consideration also made another type of bleacher wherein the seat board could not be moved without the removal of the attachment fixing it to the piece under it. It was testified that twenty per cent of the output of this company was in the type of structure here involved. Most of the

bleachers of the type here furnished had been purchased in the thirties; they had been made since 1917 and by the company which made the ones in question, since 1929. There was no proof of the purchase of any bleachers of the type here involved since 1929 or 1930 except the statement of Mr. Haft that he might have bought some in 1940, although they were widely used even up to the date of trial.

We find no insuperable bar to the submission of the case to a jury by the adjudication in Englehardt v. Phillips, supra. Certainly it may not be said that solely because there had been no reports of a seating board slipping from its brackets or of an accident caused by the defect here complained of that it conclusively appeared that it was not an inadequate safety fixture.

The test of the second syllabus in the Englehardt case may be applied to the evidence and from it, it may be said that there was affirmative evidence tending to show that the conduct of the defendants in providing the bleachers with the top seat board as they were erected fell below the standard represented by the conduct of reasonable men under the same or similar circumstances.

Judge Hart wrote the opinion in the Englehardt case and also in Hilleary v. Bromley, 61 N. E. (2d) 731, decided by this Court and reversed in **146 Oh St 214**. The latter case though not directly in point has some application here. In that case Hilleary was an independent subcontractor of Bromley Siding Company which had contracted with the owner to apply siding on his dwelling house in the city of Columbus. The Siding Company was to furnish ladders to Hilleary of sufficient strength to bear the weight of two men, their working equipment and material of about 75 pounds. The ladders furnished by the defendant were new, had been given a primer coat of paint but had not been specially inspected. However, the plaintiff inspected the ladders every day for the several days that they were in use and discovered no defect in them. One of the ladders broke causing the plaintiff to fall and to be severely injured. An examination of the ladder after the fall indicated that there was a defect in the grain of the wood of which it was constructed. This Court held that there was no showing of notice to the defendant of any defect in the ladder and that as a matter of law its conduct was not negligent and affirmed a directed verdict for the defendant. The Supreme Court held that plaintiff made a case for the jury. Judge Hart cited 2 Restatement of Torts, 1064, Section 392:

"One who supplies to another, directly or through a third

person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied: (a) If the supplier has failed to exercise reasonable care to make the chattel safe for the use for which it is supplied, or (b) if the supplier's failure to give to those whom he should expect to use the chattel the information required by the rule stated in Section 388 (dangerous condition of the chattel or facts which make it likely to be so) is due to his failure to exercise reasonable care to discover its dangerous character or condition."

In the Hilleary case the only possible negligence that could have been imputed to the defendant was its failure to take notice of a defect in the ladder which the plaintiff by repeated inspections could not discover. Contrast the factual development in the instant case where the defect which the jury had a right to find caused the plaintiff's fall was plainly observable to those who erected the bleachers.

In Wickstrom v. Ringling Bros., Barnum & Bailey Combined Shows, Inc., 313 Ill. App. 640, 40 N. E. (2d) 585, 11 Negligence and Compensation Cases Annotated (N. S.) 720, the plaintiff attended a circus and occupied a seat in a grandstand and in moving over at the request of an usher fell through an opening between bleacher boards. It was held that the defendant was negligent in leaving an opening between the boards and in failing to provide a footrest. The Court held that it was the obligation of the defendant to furnish the plaintiff a reasonably safe place to sit and to provide means whereby he could go to and from his seat on the bleachers and to change seats, if necessary, without endangering his safety. Among other things it was contended that the trial court erred in refusing to permit the defendant to introduce evidence that the seats in question were the standard type of seats used by circuses as general admission seats. The Court held against this contention and said that the question "whether the seats used were of the standard type used by circuses as general admission seats would not prove ordinary or reasonable care under the facts of a particular circus or the circumstances surrounding a particular case. We do not hold the testimony inadmissible as to the extent to which the bleachers had been used without discovery of the unsafe condition here claimed, Railroad Co. v. Anderson 11 O. C. D. 765, but that such evidence is not conclusive.

Farris v. Interstate Circuit, Inc., 116 Federal Reporter (2d) 409. The action was by a patron of a theatre against the operator for damages for injuries suffered by a fall when the plaintiff wedged the heel of her shoe in an aperture between platform, on which her seat was placed, and the leg of a chair in front of it. The plaintiff recovered a judgment although the defendant offered testimony that the theatre was constructed according to universal custom and long-followed design. Upon this subject the Court said:

"If it be conceded that the theatre was constructed after a universal and long-followed design, it does not necessarily follow that such care was taken as reasonable prudence would require."

It was testified that another person had prior to the injury of the plaintiff suffered a similar accident. Several of appellee's witnesses were working in the theatre when the accident occurred. They testified that no one of them had known of any occasion when anyone's foot or shoe had descended into the hole.

We are of opinion that upon the plaintiff's testimony there was an issue of fact as to the negligence of the defendants which should have been submitted to the jury.

It is urged that defendant Haft should have been dismissed from the case because he had granted to defendant Turner as a concession the right to take his bleachers, erect them and that the pay which he received was mere compensation for that privilege and was based upon one-half of the net profit. However, upon the testimony of Turner and other facts appearing the jury could have found that there was a joint enterprise or partnership between Haft and Turner in the transaction.

For the error in the action of the trial judge in directing a verdict for the defendants the judgment will be reversed and the cause remanded for new trial.

HORNBECK, PJ, WISEMAN and MILLER, JJ, concur.