IRENE MURPHY, Plaintiff-Appellee, *v.* WILLIAM MESSERSCHMIDT, Defendant-Appellant.

Fifth District   No. 75-198

Opinion filed September 2, 1976.

Francis D. Conner, P. C., of Belleville, for appellant.

Callis, Schooley, Filcoff & Hartman, of Granite City (William W. Schooley, of counsel), for appellee.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:

Defendant William Messerschmidt appeals from a judgment of the Circuit Court of Madison County entered upon a jury verdict in favor of plaintiff-appellee Irene Murphy, who sued for personal injuries suffered in a fall from the front porch of Messerschmidt's house, the first floor of which she occupied as a tenant. On appeal, defendant complains that certain trial errors prejudiced his case and contends that plaintiff failed as a matter of law to prove any negligence on his part.

Defendant came to the United States from Germany in 1948. In 1951, he bought the house in Granite City where the plaintiff's injuries occurred. In 1952 he replaced the rotten wooden front porch and steps with concrete ones. He had had experience in concrete construction in Germany, and he did the work on his house by himself. Some time later he painted the porch and steps with concrete paint purchased from Sears, Roebuck and Company. In 1967, plaintiff rented the ground floor of the Messerschmidt house, where she continued to live up to the time of trial. Defendant and his wife lived upstairs.

At 6:30 a.m. on December 10, 1971, Mrs. Murphy left the house to go to work. Although it was her custom to walk the four or five blocks from her apartment to the restaurant where she worked, on this particular morning she decided to take a cab because of the pouring rain. She went out the door to await the cab. Water had accumulated on the porch and steps. She was holding her umbrella in her right hand and her purse in her left hand, and was wearing wedge-type shoes with a composition sole. When she stepped off the porch onto the first step with her left foot, it "just went out," she fell, and her right foot "turned and caught on the porch." She had to use her hand to extricate her foot from the porch, and she then slid down the steps on her back. There were no eyewitnesses to plaintiff's fall.

Plaintiff testified that she had never noticed or complained about any condition of the steps. She had noticed that the porch was "a little slick" on one previous occasion when she was scrubbing it, but had not paid any attention to this condition, nor mentioned it to defendant. No foreign substance other than rain water was on the steps when she fell.

Defendant testified as to his method of constructing the porch and steps in 1952. He said that he finished the concrete with a metal trowel to give it a smooth surface so that it could be scrubbed. He denied that the surface was slick, instead characterizing its texture as "sandy." He painted the concrete with commercially prepared concrete paint designed for the

purpose. Neither plaintiff nor defendant's previous tenants nor anyone else had ever complained about the porch or steps.

Plaintiff's expert witness, a general contractor in Granite City, testified over objection that the common practice in the construction industry was to finish concrete porches and steps with a wooden rather than a metal trowel; the former, he said, would leave a rough "grainy" finish while the latter would leave a smooth "slick" finish. He also stated that common practices in the industry were to erect handrails beside steps and to add coloring agents directly to the concrete mix rather than paint the finished concrete. He noted that commercial abrasives could be added to the concrete to ensure a rough surface. There was no indication that the witness had either seen the porch and steps in question or knew how they had been constructed or what texture the surface actually had.

Also over objection, plaintiff was permitted to introduce into evidence part of the Building Officials Conference of America Basic Building Code (hereinafter Code), which was incorporated into the ordinances of Granite City in 1963. The Code required that handrails be erected on stairways. The Code was not admitted as an ordinance, as it was not in effect when defendant built the porch and steps, and by its terms did not apply to pre-existing structures. An instruction was given, however, that the Code was evidence of a "standard of conduct in the construction and alteration of buildings" and could properly be considered with all other evidence in determining whether defendant exercised ordinary care in the construction and maintenance of the steps. Defendant urges that the trial court erred in admitting part of the Code into evidence and giving the jury instruction based upon it.

■■ Industry standards are generally admissible to help establish the requisite standard of care. As our supreme court explained in *Darling v. Charleston Community Memorial Hospital*, 33 Ill. 2d 326, 331-32, 211 N.E.2d 253, 257 (1965):

> " 'By the great weight of modern American authority a custom either to take or to omit a precaution is generally admissible as bearing on what is proper conduct under the circumstances, but is not conclusive.' (2 Harper and James, The Law of Torts, sec. 17.3, at 977-78.) Custom is relevant in determining the standard of care because it illustrates what is feasible, it suggests a body of knowledge of which the defendant should be aware, and it warns of the possibility of far-reaching consequences if a higher standard is required. (Morris, Custom and Negligence, 42 Colum.L.Rev. 1147 (1942); 2 Wigmore, Evidence, 3rd ed. secs. 459, 461.) * * *
>
> In the present case the regulations, standards, and bylaws which the plaintiff introduced into evidence, performed much the same function as did evidence of custom. The evidence aided the jury in

deciding what was feasible and what the defendant knew or should have known. It did not conclusively determine the standard of care and the jury was not instructed that it did."

See also *Hardware State Bank v. Cotner*, 55 Ill. 2d 240, 302 N.E.2d 257 (1973); *Tenenbaum v. City of Chicago*, 60 Ill. 2d 363, 325 N.E.2d 607 (1975). *Cf. Gula v. Gawel*, 71 Ill. App. 2d 174, 218 N.E.2d 42 (1st Dist. 1966).

To be admissible, however, evidence of custom, like all evidence, must be relevant. Although the complete Code is not contained in the record, we have serious doubts that it envisions the type of simple structure built by defendant.[1] In any event, there was absolutely no showing that the Code sets forth the standard of care which had been required of a homeowner making repairs to his property in 1952. That is, to paraphrase the court in *Darling*, there was no indication that the Code illustrated what was feasible or a body of knowledge of which defendant should have been aware. There was evidence that defendant obtained a building permit before constructing the porch and steps, and that no building official ever informed him that he was violating any local ordinance by maintaining the porch and steps as he had built them. We think that the introduction of portions of the Code and the giving of an instruction based on it were erroneous, as was counsel's reference to the Code's provisions as an ordinance of Granite City in closing argument. These errors, which served to confuse the jury in its determination of whether defendant exercised reasonable care, could only work to defendant's prejudice. Whatever probative value the Code might have had was seriously outweighed by its prejudicial effect, and it should not have been admitted.

For the same reasons, the testimony of the general contractor called as an expert witness on the customary method among contractors of finishing concrete was prejudicial. We are not concerned in this case with the current methods of the construction industry. Defendant was not a contractor. The questions here were whether this particular porch and these particular steps, constructed almost 20 years prior to the accident, were unsafe, and whether any negligence in their construction proximately caused plaintiff's fall. The effect of the expert witness'

[1] Section 618.5 of the Code, which was introduced into evidence reads as follows: "STAIRWAY GUARDS AND HANDRAILS: Unless otherwise specifically provided for in this code all stairways shall have continuous guards and handrails on both sides and in addition thereto stairways required to be more than eighty/eight (88) inches in width shall have intermediate handrails dividing the stairway into portions not more than eighty-eight (88) inches wide."

Defendant contends that a reading of section 621.1 of the Code demonstrates that section 618.5 refers only to *interior* stairways. We are unable to determine the validity of this contention from the information in the record.

testimony was to emphasize unduly the practices of the construction industry today, and its reliance upon the Building Officials Conference of America Basic Building Code, and to divert the jury from consideration of the evidence in the case as to the steps in question, about which the expert witness did not and could not testify.

We do not, however, base our decision to reverse on these evidentiary errors. We must reverse because there was a total failure to prove either negligence or proximate cause. As Dean Prosser wrote,

> "* * * [N]egligence must be proved, and never will be presumed. The mere fact that an accident or an injury has occurred, with nothing more, is not evidence of negligence on the part of anyone. * * * [W]here the probabilities are at best evenly balanced between negligence and its absence, it becomes the duty of the court to direct the jury that the burden of proof has not been sustained.
>
> * * *
>
> * * * [T]here are many accidents which, as a matter of common knowledge, occur frequently enough without anyone's fault. A tumble downstairs, a fall in alighting from a standing street car, * * * will not in themselves justify the conclusion that negligence is the most likely explanation * * *." (Prosser, Law of Torts §39, at 211-12, 215-16 (4th ed. 1971).)

We think that the uncontroverted evidence here shows this to be such a case. *Cf. Carden v. Hunt,* 1 Ill. App. 3d 937, 274 N.E.2d 623 (1st Dist. 1971).

■■■ It is undisputed that a landlord is liable for negligently caused injuries sustained by his tenant in areas, such as the porch and steps here, over which the landlord retains control. (*Drewick v. Interstate Terminals, Inc.,* 42 Ill. 2d 345, 247 N.E.2d 877 (1969).) However, he is not charged with insuring the safety of his tenants. His duty is to exercise reasonable care. *Sollars v. Blayney,* 31 Ill. App. 2d 341, 176 N.E.2d 477 (3d Dist. 1961). Liability for common law negligence must be based on fault. *Fancil v. Q.S.E. Foods, Inc.,* 60 Ill. 2d 552, 328 N.E.2d 538 (1975). The essential element of negligence is the exposure of another to an unreasonable risk of harm. "Therein lies the distinction between an insurer—responsible for all enumerated risks—, and a negligent person—responsible only for those risks unreasonably imposed upon another." *Beccue v. Rockford Park District,* 94 Ill. App. 2d 179, 190, 236 N.E.2d 105, 110 (2d Dist. 1968).

Here, despite the testimony of the contractor, the only evidence as to the actual condition of the finish on the porch and steps was defendant's testimony that it was "sandy" or "grainy." Defendant is not to be held

accountable for the severity of the rain, which plaintiff testified was as hard as any she had ever seen. Before he can properly be held responsible for the plaintiff's injuries,

"* * * he must be shown to have been at fault, under some recognized theory of liability. The injury must be the natural and probable result of a negligent or otherwise culpable act or condition and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result. An injury is not actionable which could not have been foreseen or reasonably anticipated, and which would not have resulted had not some new and independent cause intervened to produce it. *Driscoll v. Rasmussen Corp.*, 35 Ill. 2d 74.

* * *It is not enough that a possibility of injury exists. As this court observed in *Lance v. Senior*, 36 Ill. 2d 516, 518, 'After the event, hindsight makes every occurrence foreseeable, but whether the law imposes a duty does not depend upon foreseeability alone. The likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant, must also be taken into account." *Donehue v. Duvall*, 41 Ill. 2d 377, 379, 243 N.E.2d 222, 223-24 (1968).

Mrs. Murphy had used this porch and these steps for four years without mishap or complaint, in good weather and bad, as had others during the nearly 20 years of their existence. What made the day of plaintiff's fall different was, by her own testimony, the severity of the rain. It is apparent to us that she did not fall because of any inherent condition of the porch or steps. As the court said in *Marshall Field & Co. v. LeBosky*, 133 Ill. App. 316, 323 (1st Dist. 1907),

"* * * probably no stairs are absolutely safe. We know of none upon which persons using them without due care can be guaranteed against slipping or falling. The stairway here in question was of a very common and familiar form of construction and, so far as appears, perfect of its kind. There is no evidence of negligence in these respects in the present case and whatever might be said in reference to such construction under other conditions, we find no evidence of negligence in its use in the case at bar."

■■ Even if there had been a duty imposed on defendant to install a handrail, it does not appear that its absence could have been a cause of the accident. Plaintiff's own testimony reveals that her hands were full, and she apparently made no attempt to grasp the posts beside the steps. Liability cannot be predicated upon surmise or conjecture as to the cause of injury; proximate cause can only be established when there is a reasonable certainty that defendant's acts caused the injury. Because plaintiff failed as a matter of law to prove negligence and proximate

cause, she did not sustain her burden of making a prima facie case. No contrary verdict could ever stand, and the trial court should have directed a verdict for defendant. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504 (1967). See *Potter v. Edgar*, 34 Ill. App. 3d 33, 339 N.E.2d 321 (1st Dist. 1975). *Cf. Mundt v. Ragnar Benson, Inc.*, 61 Ill. 2d 151, 335 N.E.2d 10 (1975).

For the foregoing reasons the judgment of the Circuit Court of Madison County is reversed.

Reversed.

EBERSPACHER and JONES, JJ., concur.