MARY LEE LEWIS, Plaintiff-Appellee, *v.* W. F. SMITH & CO. *et al.*, Defendants-Appellants.

First District (5th Division)    No. 78-515

Opinion filed April 20, 1979.

Brody, Gore & Fineberg, Ltd., of Chicago (Michael H. Berman, of counsel), for appellants.

Sidney Robin, Ltd., of Chicago, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Mary Lewis, brought suit to recover for personal injuries sustained in a fall on the front stairs of the apartment building in which she lived. The building was owned by defendant, Clara Peters, and was managed by defendant, W. F. Smith & Co. A jury returned a verdict in favor of plaintiff in the amount of $16,832.75 and defendants appealed, contending that: (1) it was error to deny defendants' motion for a directed verdict in that there was no duty on defendants to remove ice and snow from the stairs and that the absence of handrails could not be considered the proximate cause of plaintiff's injury; (2) the trial court erroneously refused to admit the testimony of a building inspector regarding the conformity of the stairs with the Municipal Code of the City of Chicago; and (3) the jury was improperly instructed as to the issues in the case and the definition of proximate cause. We reverse and remand.

The accident in which plaintiff was injured occurred on December 13, 1972, at approximately 12:45 p.m. The United States Weather Report for December 1972, which was admitted into evidence, discloses that on December 12, 1972, snow began falling in the early morning hours. By 6 a.m. December 12, the snow was mixed with freezing rain and ice pellets. The temperature gradually rose above the freezing mark, and only rain fell from noon until the precipitation stopped around 8 p.m. A total of 1.76 inches of water fell that day. The temperature began to fall below freezing by midnight dropping to a low of 1° F between 6 a.m. and 9 a.m. on December 13. At noon on December 13 the temperature was 21° F.

The report characterized the weather types on December 12 as fog, ice pellets and glaze, with smoke and haze. The weather type on December 13, the day of the accident, was glaze with smoke and haze.

Plaintiff testified that on December 13, 1972, she left for work at about 1 p.m., leaving through the front door of the apartment building. It was snowy and icy all over but no rain or sleet was falling. Plaintiff was wearing boots and carried her purse on her left shoulder. She started down the right side of the stairs, holding the step-like brick wall which formed a border alongside the stairs. As she stepped from the first step to the second, her feet went out from under her. There was nothing to hold on to at that point, and she fell to the foot of the stairs, her leg turning to the side and her right knee striking the bottom stair. She was helped up by a passerby who walked her to the corner after she stood for a while. Plaintiff flagged a cab at the corner and proceeded on to work.

Plaintiff worked at a restaurant from 2 p.m. to 10 p.m. but left work that day at about 9:30. Her leg had been numb, so she returned home and took a hot bath. The following day she went to the emergency room at St. Bernard's Hospital where she was examined and the leg was X-rayed and bandaged. She was given crutches and medication and referred to one Dr. Wright, whom she visited five times between December 19 and March 29. She was on crutches the entire time and did not return to work until March 4. Plaintiff was then treated by a Dr. Woods, seeing him three times between June and November of 1973. After Dr. Woods moved out of State, plaintiff was treated by Dr. Kishan Chand.

Plaintiff was examined by Dr. Chand, X-rays of the knee were again taken, and plaintiff was admitted to Jackson Park Hospital on February 15, 1974. She was discharged on March 2, 1974, following surgery on her knee. Plaintiff's leg was in a cast when she was discharged from the hospital, and she used crutches when she walked. The cast was removed after six to eight weeks, but plaintiff remained on crutches for another four or five weeks and then walked with a cane for a couple of months. She was unable to work during that time. She testified that she did not work in 1974 or 1975, returning to work about a year after the surgery. Although plaintiff again worked in a restaurant, her new work was limited to making salads. She had also undergone therapy for a few months, first going twice a week, later going only once each week. Her knee was all right at the time of trial, plaintiff said, except that it sometimes got stiff in cloudy weather. Evidence of plaintiff's medical expenses and income was admitted, as were some pictures of the building's front porch.

On cross-examination plaintiff testified that she had moved to the apartment building in May 1970. On December 12, 1973, the day before she fell, it was snowing heavily "like freezing," but she had no problem with the stairs then. The ground was snowy and icy when she returned

from work that day, and again she had no problem with the stairs. It was not snowing on December 13, plaintiff testified, either when she awoke or when she left for work. She saw no change in the condition of the stairs from the night before. Plaintiff also stated that she was not wearing her glasses when she left for work. Using a photograph which showed that the front porch had a stone step landing at the doorway that extended the width of the porch, a broad first step and four other steps leading to the sidewalk, plaintiff stated that she was holding one of the step-like brick walls alongside the porch as she stepped down. She slipped as she went from the first to the second step and let go of the wall as she began to slip.

Arnold Blair Kominsky, an architect, testified for plaintiff that there was no handrail on the stairway and that the top of the brick wall ran parallel to the ground and was 24½ inches above the first step. The court took judicial notice of an ordinance of the City of Chicago which required that a handrail not less than 30 inches above each step be placed along the stairway. It was stipulated that the ordinance was applicable to the building. Plaintiff also offered the testimony of Dr. Kishan Chand, an orthopedic surgeon and her treating physician, as to the nature, extent and treatment of her injury.

Ted Mozden, the managing agent of the apartment building, was called by plaintiff as an adverse witness under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 60.) He testified that there were no handrails on the front stairs and that he had the authority to order their installation. He further testified that there was a nonresident janitor who went to the building twice a day, arriving in the morning between 5:30 a.m. and 7 a.m. Part of the janitor's job was to see to the removal of snow, for which he was provided certain equipment. A shovel, ice chopper and rock salt were stored in the boiler room, which was kept locked when the janitor was not there, and only the janitor and the managing agent had keys to the boiler room. Some cinders were kept outside. Mozden was notified of the fall by plaintiff's phone call the day after she fell. He then spoke to the janitor and went to the building, where he found the steps to be clear, damp and salted. George Harris, the building janitor at the time of plaintiff's fall, was also called under section 60 and testified that he recalled an ice storm in December 1972 although he could not remember the exact date. Harris did remember that he was unable to remove the ice and therefore put some salt on the steps and cinders on the sidewalk.

Defendant Clara Peters, who owned the building at the time of the accident, testified that she had never seen the property and that she first found out about the accident when she was served with notice of plaintiff's lawsuit. George Harris was called by defendants and testified that he had been a janitor for 15 years. It was still sleeting and snowing

when he first put the salt on the stairs, he said. He was unable to remove the ice until after the precipitation stopped, and did so about 10 a.m. a day or two after the storm. Defendants next called John E. Neighbors, a code enforcement inspector for the Chicago Building Department, as an expert witness. After objections to the questions propounded, defendants made an offer of proof that, if allowed, Neighbors would testify that the steps were in conformity with the building code because the purpose of the railings is to prevent a fall over the side of the stairs, and that purpose was met by the brick step-walls. Defendants also presented expert testimony as to the extent of plaintiff's injury.

The case was submitted to a jury which returned a verdict in favor of plaintiff and awarded her $16,832.75 in damages. The jury also answered three special interrogatories, finding that plaintiff was not contributorily negligent and that both defendants failed to exercise ordinary care to keep the front stairs of the apartment building in a reasonably safe condition. Judgment was entered on the jury's verdict. Following denial of their post-trial motion, defendants appealed.

OPINION

■■ We must preliminarily note plaintiff's contention that defendants are conclusively bound by the answers to the special interrogatories because they were not challenged in their post-trial motion. However, defendants have based their appeal on trial error rather than on the manifest weight of the evidence, and the interrogatories therefore are not controlling. (*O'Brien v. Walker* (1977), 49 Ill. App. 3d 940, 945, 364 N.E.2d 533, 537; *Blakely v. Johnson* (1976), 37 Ill. App. 3d 112, 116, 345 N.E.2d 814, 816.) Accordingly, we will consider the merits of the case.

Defendants first contend that the trial court erred in denying their motions for a directed verdict in that they have no duty to remove the ice and snow from the stairs and that the absence of handrails alone was not sufficient to be considered the proximate cause of plaintiff's injury.

■■ Ordinarily, in the absence of a contract, there is no duty on the part of a landlord to remove natural accumulations of ice and snow from common areas that remain under his control. (*Gehrman v. Zajac* (1975), 34 Ill. App. 3d 164, 340 N.E.2d 184; *Fitzsimons v. National Tea Co.* (2d Dist. 1961), 29 Ill. App. 2d 306, 173 N.E.2d 534; *Cronin v. Brownlie* (2d Dist. 1952), 348 Ill. App. 448, 109 N.E.2d 352.) Plaintiff has not claimed that defendants were under a contractual duty to maintain the stairway. Rather, she predicates her action solely on the common law duty of a landlord to exercise ordinary care in the maintenance of a stairway and contends that the janitor failed to remove the ice when it was his job to do so.

■■■ For plaintiff to recover on the basis of the accumulation of ice and

snow, she must show that defendants in some way caused an unnatural accumulation or that they aggravated a natural condition. (*Byrne v. Catholic Bishop* (1971), 131 Ill. App. 2d 356, 266 N.E.2d 708; *Zide v. Jewel Tea Co.* (2d Dist. 1963), 39 Ill. App. 2d 217, 188 N.E.2d 383.) The evidence discloses that the janitor merely sprinkled salt on the steps and did not attempt to chip away at the ice until a day or two after the storm. The mere sprinkling of salt, which may cause the ice to melt, although it later refreezes, has not been found to be the kind of act which aggravates a natural condition and leads to liability on the part of a landlord. *Riccitelli v. Sternfeld* (1953), 1 Ill. 2d 133, 115 N.E.2d 288; *DeMario v. Sears, Roebuck & Co.* (1972), 6 Ill. App. 3d 46, 284 N.E.2d 330.

■ Nor can the fact that the janitor did not remove the ice be the basis of liability. Plaintiff maintains that the janitor failed to do his job, and that liability therefore attaches. However, the duty of the janitor to remove the ice was a duty that was owed to his employer, not to plaintiff. That the janitor was to remove the ice and regularly went to the apartment building to perform his chore cannot alone create a duty on the part of defendants. *Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 365 N.E.2d 80.

■ Furthermore, the two-day delay in finally removing the ice cannot create liability on the part of defendants. *Durkin v. Lewitz* (1954), 3 Ill. App. 2d 481, 123 N.E.2d 151, upon which plaintiff relies, contained dicta which implied acceptance of a rule requiring a landlord to remove accumulation of snow and ice within a reasonable time. That position was expressly repudiated in *Foster v. George J. Cyrus & Co.* (1971), 2 Ill. App. 3d 274, 276 N.E.2d 38, which concluded that such a duty would be unreasonable in our climate.

In *Gehrman v. Zajac*, the court refused to hold that the landlord's duty to exercise ordinary care extended so far as to require the removal of ice and snow from a stairway within a reasonable time, and noted that the duty of ordinary care could be violated when the accumulation of ice or snow results from some defect rather than from natural causes. (34 Ill. App. 3d 164, 166, 340 N.E.2d 184, 186.) The only defect which plaintiff has alleged is the absence of handrails which cannot be seen as a cause of the accumulation of ice on the stairway.

Consequently, we find that plaintiff has made no showing of any duty or breach of duty on the part of defendants with regard to the removal of ice and snow from the stairs, and it was therefore error to deny defendants' motions for a directed verdict on those grounds.

■ We do not agree, however, with defendants' contention that they were entitled to a directed verdict with regard to the absence of handrails. A directed verdict is proper "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent,

so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) We conclude that there is evidence which can support the conclusion that the absence of the handrails caused plaintiff's injury. Defendants had a duty to put handrails alongside the stairway, as was required by the city ordinance admitted into evidence. Defendants acknowledged that the ordinance applied to the stairway. Plaintiff testified that there was nothing to hold on to as she began to fall. Unlike *Murphy v. Messerschmidt* (5th Dist. 1976), 41 Ill. App. 3d 659, 355 N.E.2d 78, cited by defendants, in which the plaintiff had her hands full of packages as she negotiated a stairway without handrails, plaintiff in the instant case had a free hand which she used to grasp the brick wall as she stepped down. It was not necessary for the jury here to speculate as did the jury in *Murphy*, for the plaintiff here attempted to hold on to something and found there was nothing there.

■ Turning to defendants' next contention, we find that the testimony of the building inspector was properly excluded. Both parties had acknowledged that the ordinance applied to the building, that handrails were required and that there were no handrails. The building inspector's testimony would have shown only that the ordinance was not strictly enforced against stairways with brick step-walls because the inspector considered the step-walls to serve the same purpose as the handrails, that is, to prevent a fall over the side of the stairs. The inspector thus would have merely been expressing his own opinion rather than providing expert testimony. (See *Wickstrom v. Ringling Bros., Barnum & Bailey Combined Shows, Inc.* (1942), 313 Ill. App. 640, 649, 40 N.E.2d 585, 589.) Moreover, the facts having been clearly laid out, and the ordinance admittedly being applicable, the issue became one of causation rather than the definition of a duty. No special knowledge was needed to resolve that issue, and there was therefore no need for expert testimony. See, *e.g.*, *Brooks v. Lundeen* (2d Dist. 1977), 49 Ill. App. 3d 1, 364 N.E.2d 423; *Phillips v. Shell Oil Co.* (5th Dist. 1973), 13 Ill. App. 3d 512, 300 N.E.2d 771.

■ Finally, defendants contend that the jury was improperly instructed as to the issues and proximate cause.

The following instruction was given to the jury over defendants' objection:

"When I use the expression 'proximate cause', I mean a cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury."

Defendants contend that only the first sentence of the instruction

should have been given. The instruction is Illinois Pattern Jury Instruction, Civil, No. 15.01, which, according to its commentary, should be given in its entirety when there is evidence of a concurring or contributing cause other than the negligence of the defendants. The first sentence is to be used when only the conduct of the plaintiff and defendant is in issue. In the instant case, the weather conditions are a factor to be considered in determining the cause of plaintiff's injury. Under such circumstances, the giving of the entire instruction has been found to be proper and we so hold. *Laukkanen v. Jewel Tea Co.* (4th Dist. 1966), 78 Ill. App. 2d 153, 222 N.E.2d 584.

However, we agree that it was prejudicial error to submit plaintiff's issue instruction to the jury. The instruction reads in part:

"The plaintiff claims she was injured and sustained damage while exercising ordinary care and that the defendants were negligent in one or more of the following respects:

Failed to use ordinary care to keep the front stairs in a reasonably safe condition.

They failed to take reasonable [sic] adequate measures to treat or remove the ice from said stairs.

They failed to provide handrails alongside of the steps, in violation of the Municipal Ordinances of the City of Chicago.

The plaintiff further claims that one or more of the foregoing was a proximate cause of her injuries."

As we have already stated, the landlord's duty of ordinary care does not require the removal of natural accumulations of ice and snow and plaintiff has produced no evidence of any defect in the stairs themselves. The statement that defendants "failed to use ordinary care" is thus unsupported by the evidence. Furthermore, when that statement is followed by one which says defendants "failed to take reasonable [sic] adequate measures to treat or remove the ice from said stairs," the instruction results in a misstatement of defendants' duty by implying that they were obligated to remove the ice. The giving of the instruction therefore constituted prejudicial error. See *Graves v. Wornson* (3d Dist. 1978), 56 Ill. App. 3d 873, 879, 371 N.E.2d 692, 697, and cases cited therein.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

SULLIVAN, P. J., and WILSON, J., concur.