**Lillian Zide, Plaintiff-Appellee, v. Jewel Tea Company, a Corporation (and American National Bank and Trust Company of Chicago, Trustee Under Trust No. 10552), Defendant-Appellant.**

Gen. No. 11,642.

Second District, Second Division.

February 19, 1963.

Hall, Meyer, Van Deusen, Holmberg and Snook, of Waukegan, for appellant, Jewel Tea Company, a Corporation.

Max Lidschin and Glenn K. Seidenfeld, of Waukegan, for appellee.

WRIGHT, P. J.

This action was brought to recover damages for personal injuries sustained by the plaintiff when she fell in the parking lot of defendant, Jewel Tea Company, in Waukegan, Illinois.

The case was tried before a jury. At the close of the plaintiff's evidence, defendant moved for a directed verdict which motion was overruled. A verdict was returned finding the defendant, Jewel Tea Company, guilty and assessing plaintiff's damages in the sum of $25,000. Judgment was entered on the verdict.

Thereafter, the defendant, Jewel Tea Company, filed a post-trial motion for judgment notwithstanding the verdict and in the alternative for a new trial. These motions were overruled. Defendant, Jewel Tea Company, appeals.

The defendant, Jewel Tea Company, operates a grocery store on Glen Flora Avenue in Waukegan, Illinois. On the east side of the store, defendant maintained a parking lot for its customers about three-fourths acre in size surfaced with bituminous material. The lot is

219

bordered on the north edge by a sidewalk which leads to the front entrance of the store. The parking lot contains many parking lanes and bays delineated by painted lines and slopes toward the east.

The accident occurred after dark on January 31, 1959. On that date in Waukegan the temperature had ranged between eight degrees below zero and eleven degrees above zero. Two and one-half inches of snow had fallen the previous evening adding to the already accumulated ten inches.

Plaintiff, age 39, testified that on the day of the occurrence she left her home at approximately 5:30 o'clock p. m. and drove a distance of six blocks to shop at the store of the defendant; that she drove into the east lane of the parking lot and parked her automobile on the north end of the parking lot in the second parking stall east of the store; that she then opened the front door on the driver's side and proceeded to leave the automobile while the dome light was on; that she could see the surface on which she first stepped and it was completely clear of any ice and snow. Plaintiff then shut the door, put her hand on the car next to her and started to walk toward the store and after taking a couple of steps fell between the rear bumper of her automobile and the one to the west. The plaintiff testified "I started to walk, the next thing I knew I was lying on the ice. I didn't even realize I had fallen until I was on the ice . . . It happened so fast I didn't realize I had fallen." Plaintiff then tried to raise herself up by placing her hand on the rear bumper of her automobile and slipped and fell again. She further stated that she noticed she was lying on ice that was "heavy and ridged."

Marvin Hackbarth, manager of defendant's store, testified that on the morning of the accident the snow on the parking lot had been plowed by a jeep with a straight blade snow plow attached. That the snow was plowed from the north end to the south end of the lot.

220

He stated that after the plowing operation, the entire lot was covered by light packed snow and that he observed no ice on the parking lot. He also testified that an employee had spread salt around the entrance to the store in the area of the canopy to thaw the ice and packed snow. This area was sprinkled with salt about four times during the day, the last time being about 4:00 o'clock p. m.

Robert Sorensen, employed as a carry out boy by the defendant, testified that on the day of the accident the snow on the parking lot had been plowed and thereafter the parking lot was covered with a thin film of snow about one-eighth of an inch thick. This witness described the snow "as hard packed snow" and stated there was no ice on the parking lot. He further testified that he actually noticed the plaintiff in the process of falling, and that she was directly east of him walking in a line coming from the east to the west and that she fell near the second parking stall. He also testified that plaintiff's automobile was parked in the fourth or fifth stall and that the place where plaintiff fell was covered by hard packed snow.

Frank J. Furlan, a civil engineer, called as plaintiff's witness, testified that he measured the parking stalls, demarcations of individual parking bays and took relative elevations of a good portion of the parking lot; that he examined the first few parking areas immediately south of the sidewalk along Glen Flora Avenue adjacent to the exit that goes by the Jewel Tea Store entrance; that he found the parking lot drained from the store toward the easternmost edge of the lot where a drain was located; that there was a total drop from the building to the drain of 1.4 feet. He further testified that with the exception of minor undulations, there was a constant drain from the building to the drain area with the exception of the first parking bay. He stated that undulations, if they are on a flat surface, will cause the area to form puddles, but if the undu-

221

lations are on a pitched area the water will run away provided the undulations are not more than the pitch.

Defendant contends (1) That in the maintenance and operation of its parking lot defendant violated no duty owed to the plaintiff and was not guilty of any negligence. (2) That plaintiff was not in the exercise of ordinary care for her own safety at the time of the occurrence in question and that her injuries were the proximate result of her own negligence. (3) That the verdict of the jury is contrary to. the law and the evidence and the trial court erred in refusing to direct a verdict for the defendant and overruling defendant's motion for judgment notwithstanding the verdict and in the alternative for a new trial. (4) That the verdict of the jury is against the manifest weight of the evidence and, (5) That the trial court erred in admitting into evidence over defendant's objections, Plaintiff's Exhibits Nos. 1, 2 and 3.

Plaintiff argues that the ice on which plaintiff fell did not accumulate from natural causes but was caused by water from the melted snow and ice salted and thawed by defendant's employees, which drained from the area around the store entrance to the place where plaintiff fell and that from the physical characteristics of the surface, the jury could reasonably infer that the salt and warmth from the store entrance melted the ice and packed snow around the area of the canopy and from the pitch of the parking lot it could only run down into the lot where it would accumulate in the undulations and freeze.

Plaintiff further contends that defendant's alleged negligence and plaintiff's alleged exercise of ordinary care were questions of fact properly submitted to the jury and that no error was committed in admitting into evidence Plaintiff's Exhibits 1, 2 and 3.

■■ A property owner is not liable for injury sustained by a business invitee in a fall on an icy sidewalk

222

or parking lot maintained by the property owner for the use of its customers where the condition is a natural one and not caused or aggravated by the property owner. Kelly v. Huyvaert, 323 Ill App 643, 56 NE2d 638. However, a property owner may be liable for injury sustained by a business invitee who falls and is injured as a result of snow and ice which did not accumulate from natural causes, but as a result of the property owner doing something which causes an unnatural or artificial accumulation of the ice and snow. Fitz Simons v. National Tea Co., 29 Ill App2d 306, 173 NE2d 534.

In support of her theory, the plaintiff relies heavily upon Fitz Simons v. National Tea Co., supra. This case, recently decided by this court merits detailed consideration as well as comparison to the case now before us for decision. In the Fitz Simons case, an action was brought to recover damages for personal injuries sustained by the plaintiff when she fell on ice in the parking lot at a shopping center where defendant's store was located. The occurrence took place after dark on February 13, 1958. The weather was clear and cold and the last snow fall of any consequence was on January 21, 1958, when there had been a very heavy snow fall. The National Tea Company had a snow plow push the snow located in the parking lot north and west of its store into two large piles at the east end of the parking lot. There was a drain at the west end of the north side of the lot. There were days of alternate thawing and freezing between January 21st and February 13th, when some of the snow would melt and drain across the lot to the drain at the west end and freeze in places. The ice along the north edge of the parking lot was rough and dark and contained ridges made by wheels of automobiles. The plaintiff walked to the rear of her automobile to the area where the melted snow had accumulated into ice. In attempting to walk over an

incline formed by the accumulated ice, she suddenly slipped on the ice and fell.

In the Fitz Simons case, the ice upon which the plaintiff fell was described as "rough and dark," "rutted" ice, with "ridges" made by wheels of automobiles. In the case at bar, the plaintiff, likewise, described the ice at the place she fell as "heavy, thick, ridged ice." Beyond the use of these descriptive terms, there exists no similarity in the two cases. In the Fitz Simons case, we held that there was evidence from which a jury might find that the National Tea Company was negligent. In that case, National Tea Company had plowed snow into a pile where it remained for some two weeks during a period of alternating freezing and thawing weather. There was evidence that water from the melted snow ran into the parking lot where on a freezing day it formed a solid sheet of ice and accumulated as "rutted" ice made by the wheels of automobiles. There was evidence that Mrs. Fitz Simons fell upon this ice formed over a period of two weeks.

In the Fitz Simons case, there was evidence that the ice upon which the plaintiff fell did not accumulate from natural causes but was the result of the National Tea Company doing something which caused an unnatural and artificial accumulation of ice. Whereas, in the case now before us, there is absolutely no evidence that the ice upon which plaintiff is alleged to have fallen was caused or aggravated by the defendant, Jewel Tea Company.

It is the theory of the plaintiff that the ice on which she fell was caused by water from the melted snow and ice thawed by defendant, which drained from the area around the store entrance to the place in the parking lot where she fell. There is no evidence in the record that the application of salt to snow and ice around the store entrance would produce water that would flow or drain to the place where the plaintiff fell, and

224

there is no evidence that water drained or would drain from the area around the store entrance to the place where the plaintiff fell. If water was produced by the thawing of ice and snow around the store entrance and if it could drain to the place in the parking lot where the plaintiff fell as argued by plaintiff, then and in that event, there is no evidence that water would on the day of the accident, when the minimum temperature was minus eight degrees and the maximum temperature plus eleven degrees, flow across an open, exposed and unheated area for a distance of at least thirty feet.

If we were to indulge in the above presumptions of the plaintiff which are unwarranted by the evidence, then we would be forced to speculate further that the alleged water in some fashion accumulated and froze causing ice at the point where she fell. The opposite conclusion is supported by Plaintiff's Exhibits 1, 2 and 3, which show puddles of water in the middle of the first parking bay and partially into the middle of the second parking bay, but the exhibits indicate that the place where plaintiff is alleged to have fallen is completely dry and clear. This is substantiated by the testimony of Frank J. Furlan, a civil engineer called as plaintiff's witness, who testified that the undulations or depressions were found in the middle of the first parking bay. There is no testimony in the record, expert or otherwise, that there were undulations or depressions at the point where plaintiff fell.

█ It was essential to the plaintiff's cause of action that some evidence be introduced to show that her fall resulted from other than the presence of snow and ice accumulated as a result of natural causes. Kelly v. Huyvaert, supra. Since there is no evidence in the record that the thawing of ice and snow by defendant around the entrance to defendant's store produced or could produce water which drained or could drain

to the parking lot and there accumulate and freeze causing ice at the place where the plaintiff fell, it follows that if plaintiff is to recover it must be presumed that the thawing of ice and snow around the entrance of the store would produce water, and further presumed that the water would drain to the place in the parking lot and accumulate and freeze where the plaintiff fell. A presumption cannot be based upon a presumption or an independent inference on another inference. Nystrom v. Bub, 36 Ill App2d 333, 184 NE2d 273; Ohio Bldg. Safety Vault Co. v. Industrial Board, 277 Ill 96, 115 NE 149; Globe Acc. Ins. Co. v. Gerisch, 163 Ill 625, 45 NE 563.

■ A motion for a directed verdict or for judgment notwithstanding the verdict presents the single question whether there is in the record any evidence, which standing alone and taken with all of its intendments most favorable to the party resisting the motion, tends to prove the material elements of the case. Lindroth v. Walgreen Co., 407 Ill 121, 94 NE2d 847; Weinstein v. Metropolitan Life Ins. Co., 389 Ill 571, 60 NE2d 207.

■ In passing on the question here presented as to whether the trial court should have granted defendant's motion and entered judgment for the defendant notwithstanding the verdict, we are not unmindful that the right to a trial by jury is a fundamental one.

■ A party should not be deprived of the right to have his case passed on by a jury if he has produced any evidence which proves or tends to prove his claim, or from which reasonable inferences can be drawn which tend to support his claim. In determining the question, all of the evidence favoring the party must be considered as true and it must be considered in the light most favorable to the party. The question of the credibility of the witnesses and the preponderance of the evidence are not involved.

These are questions for the jury. Busser v. Noble, 22 Ill App2d 433, 161 NE2d 150.

■ It does not suffice to say that the verdict of the jury involved conjecture and speculation. When facts are in dispute or the evidence is such that fair minded men might draw different inferences, a measure of conjecture and speculation is required on the part of the jury to settle the dispute by choosing what seems to them to be the most reasonable inference. However, where there is a complete absence of probative facts to support the verdict of the jury, it should be set aside. Lavender v. Kurn, 327 US 645.

■ When the evidence adduced at the trial of the instant case is focused in the light of the foregoing rules, we believe there is a complete absence of evidence to support the theory advanced by the plaintiff and the verdict reached by the jury. We are of the opinion that the evidence conclusively shows that the defendant, Jewel Tea Co., used every reasonable precaution that could be expected on the date of the occurrence in question to maintain its parking lot in a reasonable safe condition for its customers.

From the foregoing resume of the evidence, we believe it is clear that the plaintiff failed to prove that the defendant did anything which caused an unnatural accumulation of ice or snow at the place where the plaintiff fell, but on the contrary, we believe that the defendant, Jewel Tea Co., by scraping the snow from its parking lot on the morning of the occurrence in question and by applying salt around the entrance to its store during the day to prevent ice from accumulating exercised reasonable care to keep its premises reasonably safe for the use of the plaintiff and other customers. To hold otherwise, would place the defendant in the position of an absolute insurer of the safety of its business invitees contrary to the settled law of our state. Fitz Simons v. National Tea Co., supra;

227

Deitz v. Belleville Co-op Grain Co., 273 Ill App 164. We, therefore, conclude that the trial court should have granted defendant's motion for judgment notwithstanding the verdict.

The judgment of the trial court is reversed and remanded with directions to set aside the verdict and judgment entered thereon and enter judgment for the defendant, Jewel Tea Company.

Reversed and remanded with directions.

CROW and SPIVEY, JJ., concur.