**Stanley J. Sims, Plaintiff-Appellee, v. Alfred G. Block and Mabel H. Block, Defendants-Appellants.**

**Gen. No. 67–106.**

Second District.

April 24, 1968.

Reno, Zahm, Folgate and Skolrood, of Rockford, for appellants.

Haye and Keegan, of Rockford, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

A suit was instituted by the plaintiff, a tenant, against defendants as his landlord, to recover damages for personal injuries sustained when the plaintiff fell on a ridge of ice and snow in a parking lot provided for the occupants of the defendants' 48-apartment building. Trial

by jury resulted in a verdict for plaintiff in the amount of $4,000. Defendants appeal from the judgment entered on the verdict. No question is raised on the pleadings.

Defendants raise as issues, whether the plaintiff was guilty of contributory negligence as a matter of law; whether defendants were guilty of negligence as a matter of law; and whether the jury was properly instructed.

On December 15, 1964, at 11:00 o'clock p. m., after parking his car in a parking space, the plaintiff was injured while alighting from his car. In so doing, he stepped from the driver's side of his car onto a built-up ridge of ice and snow, causing him to fall and severely fracture his left leg. The space into which he drove his car was bare, evidently because another car had previously been parked there for some time.

The plaintiff and his daughter provided the only description of this built-up area of ice and snow. The plaintiff's very brief account of his fall described how he slipped off a ridge of snow covered with ice. His daughter examined the area the afternoon following the accident and testified that she observed a 5 to 6-inch ridge of snow and ice along the left side of her father's parked car, still located in the position it had occupied the evening before.

Three persons who had rendered immediate aid to the plaintiff after his fall, furnished no information about this snow and ice accumulation. The defendant and an employee, Mr. Ebert, testified they felt the lot was cleared of snow and ice "as much as possible," by a snow plowing operation performed by Mr. Reali on December 5, 1964. This date was ten days prior to the plaintiff's fall. Defendant, Alfred Block, conceded in his testimony that he was at the parking lot every day between December 5th and December 15th; that water and moisture drained to some extent from the surrounding higher ground to the east down into the parking lot; that on December 15th there were spots in the lot where the

218

snow melted "and it might have been frozen." He testified to some snow being left on the lot after the plowing.

Meteorological records revealed that a series of snowfalls ended on December 5, 1964, and as of that date the snow on the ground in the Rockford area measured eight inches. There had been no appreciable snowfall in the intervening 10 days, but warming weather and resultant thawing had reduced the ground snow cover to one inch by December 15, 1964. Defendant, Alfred Block, testified that in the interval between December 5th and December 15th there was a thaw and freeze which formed ice all over town.

In describing the manner in which he normally cleared the defendants' lot, Mr. Reali stated he used a plow to push the snow into a pile in the center of the lot. The parking lot surface was crushed stone, and although dry wells had been installed, the drainage pattern was not depicted. Cross-examination of Reali and Ebert concerning the plowing procedure employed, reflected that if a parking stall was occupied by an auto at the time of plowing, the operator would simply plow around this parked car.

Although the snowplow was sketchily described, it is a fair inference from the record that the spillover of the snow as the plow skirted the parked car would have increased the depth of the snow at that location.

Turning first to the defendants' contention that the plaintiff was guilty of contributory negligence as a matter of law, we note that the plaintiff admitted having two highballs after he left work at 10:30 p. m., after which he drove home and parked in the defendants' lot. The plaintiff later told the hospital intern that he had consumed "several" drinks before he fell. The defense contended that because the plaintiff used the word "several" in another context as denoting a number as high as "4," this point lends support to their theory that the

plaintiff was intoxicated at the time of the occurrence. The defendants further contend that the court erred in refusing to give defendants' instruction number 8, which is IPI number 12.01.

The basis for tendering this instruction can only be drawn from the plaintiff's admission that he had had two drinks, plus the testimony of defendants' witness Gary Boetcher. This witness testified that he helped plaintiff Sims into Boetcher's car and together with two other men, drove the plaintiff to the hospital. Boetcher smelled alcohol on the plaintiff's breath, and while in the parking lot, had noted the plaintiff's conversation "wasn't too clear."

■ ■ The defendants did not inquire whether this witness held an opinion as to the plaintiff's state of sobriety or intoxication. Although the burden is on the plaintiff to prove his due care, when, as here, defendants seek to refuse this claim by proving that the plaintiff was in fact intoxicated, they must do more than to simply show the plaintiff had been drinking.

■ ■ The conversation in the parking lot occurred after the plaintiff had sustained a severe and painful injury. Therefore, under these circumstances we are not impelled to equate this single factor, i. e. lack of clarity of conversation, with intoxication. There must be proof of an impairment of mental and physical facilities with the resultant diminution in the ability to think and act with ordinary care. Shore v. Turman, 63 Ill App2d 315, 322, 210 NE2d 232 (1965) ; Kitten v. Stodden, 76 Ill App2d 177, 180, 221 NE2d 511 (1966). These cases hold that "drinking, standing alone, cannot be equated with intoxication," where the fact of intoxication is not itself the ultimate issue. We believe this rule is applicable in the instant case, and where, as here, the defendants introduce insufficient evidence to warrant the giving of the intoxication instruction, the court may properly refuse it.

220

■ ■ The defendants contend that the evidence demonstrates contributory negligence as a matter of law. However, we hold that the plaintiff was not negligent as a matter of law. It is not negligence per se to go upon dangerous premises. Considering the evidence and the reasonable inferences to be drawn therefrom, as we must, we cannot say that all reasonable minds would agree that plaintiff was guilty of contributory negligence. The question of contributory negligence was properly one for the jury to decide. Fitzsimons v. National Tea Co., 29 Ill App2d 306, 320, 173 NE2d 534 (1961) ; Durkin v. Lewitz, 3 Ill App2d 481, 494, 123 NE2d 151 (1954).

We turn now to the question of whether the defendants were guilty of any negligence which proximately caused the plaintiff's injury. The many Illinois "snow and ice" cases reveal that each case turns largely on its own facts rather than on the manner in which the rule of law is stated.

■ Initially, we feel that the standard of care required of a landlord who provides a parking lot for the convenience of his tenants, in no sense varies from the standard of care applicable in those instances wherein a store makes a parking lot available for its customers.

In both cases the parking lot is a convenience designed to attract the customers to the store and the tenants to the apartments. We believe, therefore, that each relationship dictates the application of a similar rule as to the care required. Durkin v. Lewitz, supra, 485–486.

■ ■ The defendants as owners-landlords retained control over the parking lot used in connection with the apartment which they leased, for the common use of the various tenants. They, therefore, had the duty of exercising reasonable care to keep the premises in a reasonably safe condition for use by tenants. We see no reason to except conditions of snow and ice from this general duty. However, as to conditions of purely natural origin, such as snow and ice, the rule has been differently stated

221

in various jurisdictions, and even in our Appellate Court opinions, in different districts. The so-called "Connecticut rule" has been applied in the first district case of Durkin v. Lewitz, supra, 491, while this court has applied the so-called "Massachusetts rule." We have held that the owner or possessor of a parking lot used in conjunction with a business operation is not liable for injury sustained by a business invitee in a fall on ice in a parking lot where the condition is a natural one and not caused or aggravated by the owner or possessor of the lot. However, liability may be incurred when snow or ice is not produced or accumulated from natural causes, but as a result of artificial causes, or in an unnatural way, or by a defendant's own use of the area concerned and creation of the condition, and where the condition had been there long enough to charge the responsible party with notice and knowledge of the dangerous condition. Fitzsimons v. National Tea Co., supra, 318; Zide v. Jewel Tea Co., 39 Ill App2d 217, 222–223, 188 NE2d 383 (1963).

There is a further rule of law which must be examined in its application to the facts of this case. The fact is that defendants did make an effort to remove the snow from the common parking lot, irrespective of any question of the original duty with which they might be charged. The law is clear, that having so acted, defendants became charged with the duty of exercising ordinary care in accomplishing the clearing of the lot. They are charged with liability, because, having chosen to perform, they have thereby become subject to a duty in respect to the manner of performance. Jordan v. Savage, 88 Ill App2d 251, 232 NE2d 580 (1967); Roesler v. Liberty Nat. Bank of Chicago, 2 Ill App2d 54, 59–60, 118 NE2d 621 (1954); Nelson v. Union Wire Rope Corp., 39 Ill App2d 73, 121–122, 187 NE2d 425 (1963).

The opinion of this court in Cronin v. Brownlie, 348 Ill App 448, 456–457, 109 NE2d 352 (1952), cited by

defendant, does not conflict with the general rule stated above. For in that case, liability was denied on the basis of the conclusion that, because the defendant at an entirely different, and past, time had voluntarily undertaken to remove ice and snow, the defendant was not charged with the duty to do so on the occasion in question where no duty to remove the snow and ice was found under the particular facts. Here the duty was undertaken in connection with the very condition charged by the plaintiff as the cause of his injury.

 Applying these rules to the facts of this case, we find that there is sufficient evidence from which the jury might have found, as a question of fact, that the defendants were negligent. There was evidence of a 5 or 6-inch ridge of snow and ice along the left side of plaintiff's parked car where he testified he fell. Defendants testified that there was some snow left after the plowing and that there were spots in the lot where the snow melted after the plowing, which might have been frozen. There was evidence of warming weather and resultant thawing sufficient to account for an icy condition. Defendant, Alfred Block, was present at the lot each day during the ten-day interval between the plowing of the lot and the fall of the plaintiff, charging him with knowledge of the condition of the lot. There is no evidence that defendants, in that interval, acted in any way to remedy the condition. The facts place this case within the purview of the Fitzsimons case, supra, and distinguish it from the Zide case, supra.

Under these circumstances the question of defendants' negligence in creating an unnatural condition was properly one of fact for the jury to decide.

The judgment will be affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.