ANDREW A. BYRNE, Plaintiff-Appellant, *v.* CATHOLIC BISHOP OF CHICAGO, Defendant-Appellee.

(No. 54127; ▓▓▓▓▓▓▓▓

First District—January 8, 1971.

Bradley & Bradley, of Chicago, for appellant.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago, (John M. O'Connor, Cornelius J. Harrington, Jr., and Thomas W. Scheuneman, of counsel,) for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Plaintiff appeals from the entry of a judgment in favor of defendant notwithstanding the verdict. Plaintiff filed this negligence action to recover for personal injuries which resulted from a fall in a parking lot maintained and controlled by defendant. At the close of all the evidence the jury returned a verdict in favor of the plaintiff for $10,000. Thereafter defendant filed a post-trial motion for judgment notwithstanding the verdict which was granted by the trial court. Plaintiff appeals from this ruling.

On appeal plaintiff contends that the question of defendant's negligence in clearing the parking lot of snow was one of fact and properly submitted to the jury and that there was sufficient evidence to support the jury verdict in his favor.

On December 23, 1961, plaintiff drove his car to St. Colette's Church in Rolling Meadows, Illinois, to attend Saturday confession service. He was a regular parishioner at the church. Plaintiff drove his car into the church parking lot which was owned, controlled and maintained by the defendant, and parked in the center of the lot located to the east

of the church, approximately two hundred feet from the church entrance.

Plaintiff testified that about three inches of snow had fallen the night before. (According to the weather bureau report, admitted into evidence without objection, the station nearest to Rolling Meadows reported that there had been seven or eight inches of snow.) At 4:00 P.M. when plaintiff arrived at the church it was wet and drizzling which made the snow slushy.

A piece of road grading equipment was being operated to clear off the parking lot. When plaintiff emerged from his car he noticed that the parking lot was wet and that there were patches of snow all over the lot. He noticed nothing about the ground right next to his car door except that it was wet. The grader had already cleared out the area where he parked his car.

Plaintiff had no difficulty walking to the church except that he was compelled to walk around the mounds of snow at the sidewalk where the grader had pushed the snow. The grader was pushing the snow toward the church and the sidewalk and it was being operated just to the north of where he had parked his car, some sixty or seventy feet away.

Plaintiff remained in the church for fifteen or twenty minutes. When he came out the grader was still working in the area north of his car. There were patches of snow all over the lot "but not so much that I couldn't avoid them." There were no other cars parked in the lot except one car that pulled up just as he started to get into his car. As he walked around to the side of his car to reach for the door on the driver's side, he stepped on a mound of snow and fell, striking his head and knee. As he lay on the pavement he looked around to see what he had fallen on and noticed a patch of snow located right along the side of his car. The patch was a foot or so in diameter and two or three inches high and an inch thick around the edges. He did not know whether the patch of snow was hard or soft nor did he know whether this patch of snow was missed by the grader, dropped by some other car, or where it came from.

As a result of the fall the plaintiff suffered a fractured kneecap requiring hospitalization and surgery. He also lost time from work.

Father James Halpin, pastor of St. Colette's Church, (called by plaintiff under Section 60 of the Civil Practice Act) testified that Myer Bros., who were in the cement business, cleared the snow from the parking lot on a voluntary basis. The snow clearing equipment arrived some time previous to the hours of the service of confession, which began at 4:00 P.M. The grader had a blade which was set at an angle and as it plowed

the snow fell off to the left or right depending on the direction in which the blade was set. After a heavy snowfall it was not possible for the road grader or any other type of equipment to remove all of the snow from the surface of the parking lot.

Defendant offered no additional evidence.

*Opinion*

Plaintiff contends that the question of defendant's negligence in clearing the parking lot of snow was one of fact and properly submitted to the jury and that there was sufficient evidence to support the jury verdict in his favor. Defendant argues that the trial court properly entered a judgment notwithstanding the verdict since there was no evidence from which the jury could have concluded that the patch of snow on which plaintiff slipped was an unnatural condition or a natural condition aggravated by defendant. The standard now applicable to judgments notwithstanding the verdict is set forth in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510:

> "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

In *Pedrick, supra,* 505, the court also said:

> "* * * [T]he right to a jury trial includes the right to a jury verdict only if there are factual disputes of some substance."

In *Zide v. Jewel Tea Co.*, 39 Ill.App.2d 217, 222, a case in which the plaintiff slipped on a patch of ice in defendant's parking lot, the court stated:

> "A property owner is not liable for injury sustained by a business invitee in a fall on an icy sidewalk or parking lot maintained by the property owner for the use of its customers where the condition is a natural one and not caused or aggravated by the property owner. *Kelly v. Huyvaert*, 323 Ill.App. 643, 56 N.E.2d 638.) However, a property owner may be liable for injury sustained by a business invitee who falls and is injured as a result of snow and ice which did not accumulate from natural causes, but as a result of the property owner doing something which causes an unnatural or artificial accumulation of the ice and snow." *Fitz Simons v. National Tea Co.*, 29 Ill.App.2d 306, 173 N.E.2d 534.

In the instant case there were no eyewitnesses who saw how the patch of snow got alongside of plaintiff's car, and, as the plaintiff testified, even he did not know where the patch of snow came from. Therefore,

we find that the plaintiff proffered no direct evidence to show that the road grader dropped the patch of snow next to plaintiff's car.

The plaintiff contends that even if there was no direct or eyewitness evidence of the act of defendant's wrongdoing, the jury was entitled to arrive at a conclusion based on reasonable inferences which flow from the circumstantial evidence. As the plaintiff states in his briefs:

"The real question that the jury had to decide was whether the defendant had breached its duty of exercising ordinary care in the clearing of its parking lot. Whether or not the snowplow dropped the snow, plowed around it or totally missed it is not the critical question. This uneven mound of snow, it could reasonably be inferred, was the result of the snow clearing operation that was actively taking place while the plaintiff was in the church.

\* \* \*

It is submitted that based on the evidence this jury could have reasonably concluded that the defendant created the condition of the snow which caused plaintiff's fall. And the jury could have reasonably concluded that the defendant through its agent should in the exercise of ordinary care have taken steps to remove the unnatural mounds of snow in view of the imminent use of its parking lot by parishioners arriving for the Saturday service."

Plaintiff testified that the road grader had already cleared out the area where he parked his car and that when he got out of his car he noticed nothing about the condition of the ground right next to his car except that it was wet. He also testified that the road grader was working north of his car some sixty or seventy feet away from where he parked, and when he came out of the church the grader "was still working in that area." Plaintiff suggests that the jury could reasonably infer that the grader came back to the cleared area and dropped the patch of snow on which he slipped next to his car. This is conjecture and speculation. There must be some affirmative showing by the plaintiff of an unnatural accumulation of snow or an aggravation of a natural condition by the owner of the property before the property owner will be liable for the injury sustained. *Zide v. Jewel Tea Co., supra,* and *Anderson v. Davis Development Corp.,* 99 Ill.App.2d 55.

Plaintiff cites *Fitz Simons v. National Tea Co.,* 29 Ill.App.2d 306; *Sims v. Block,* 94 Ill.App.2d 215; and *Schallinger v. The Great Atlantic and Pacific Tea Co.,* 334 Mass. 386, in support of his arguments. However, in each of these cases the court found that the defendant created the unnatural condition and that the defendant had a sufficient period of time, two or three days in *Fitz Simons,* ten days in *Sims* and four days

in *Schallinger,* to charge the defendant with notice and knowledge of the dangerous condition. This interval of time was held to be sufficient to allow the defendant to remedy the condition. In the instant case there was only an interval of fifteen or twenty minutes from the time the plaintiff went into the church until he came out and slipped on the patch of snow. Plaintiff also testified that he noticed patches of snow all over the lot but not so much that he could not avoid them.

Furthermore, in each of the cases cited by the plaintiff there was sufficient evidence to show that the dangerous condition was created by an unnatural ice accumulation caused by the defendant. In the instant case there was no showing of the origin of the patch of snow next to the plaintiff's car.

The plaintiff argues that the jury could have reasonably inferred from the evidence that a property owner who undertakes to clear snow from his premises must remove all traces of snow and he must do so during the course of his snow removing operations. Plaintiff suggests that only by removing all traces of snow could he have been given complete assurance that he would not slip on the patch of snow. However, since the snow removal job was still in progress at the time plaintiff was injured, we believe that the defendant used reasonable care to keep his premises reasonably safe for the use of the plaintiff. As the court said in *Zide, supra,* 227:

"From the foregoing resume of the evidence, we believe it is clear that the plaintiff failed to prove that the defendant did anything which caused an unnatural accumulation of ice or snow at the place where the plaintiff fell, but on the contrary, we believe that the defendant, Jewel Tea Co., by scraping the snow from its parking lot on the morning of the occurrence in question and by applying salt around the entrance to its store during the day to prevent ice from accumulating exercised reasonable care to keep its premises reasonably safe for the use of the plaintiff and other customers. *To hold otherwise, would place the defendant in the position of an absolute insurer of the safety of its business invitees contrary to the settled law of our state."* (Emphasis ours.)

See also *Deitz v. Belleville Co-op. Grain Co.,* 273 Ill.App. 164.

The trial court properly granted defendant's motion for judgment notwithstanding the verdict.

The judgment is affirmed.

Judgment affirmed.

STAMOS, P. J., and ENGLISH, J., concur.