MAJA A. CLAUSON, Plaintiff-Appellant, *v.* LAKE FOREST IMPROVEMENT TRUST, Defendant-Appellee.

(No. 70-192;

Second District—November 11, 1971.

1042

Barclay, Damisch & Sinson, of Chicago, for appellant.

John F. Grady, of Waukegan, for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Maja A. Clauson sued the Lake Forest Improvement Trust, claiming injuries from a fall on ice adjacent to defendant's building. Defendant's motion for a directed verdict at the close of all the evidence was granted. On this appeal, plaintiff argues that it was error to grant the motion because there was ample evidence in support of her claim to require submission of the issues to the jury. She also urges that the trial court erred in excluding certain photographs from evidence.

On February 2, 1966, defendant owned and maintained a building at 653 North Bank Lane, Lake Forest, Illinois. That morning, plaintiff was walking north on the east sidewalk of Bank Lane. As she crossed an alley which intersected the sidewalk in an east-west direction, she fell on an accumulation of ice near the north curb of the alley. Defendant's building is located north of and adjacent to said alley.

At the trial, plaintiff testified that she did not see the ice before she

fell because it was covered with a coating of snow; that after her fall, while awaiting aid, she sat and looked east into the alley, and saw two downspouts coming from defendant's building with "ice coming out from them" and flowing down the alley to Bank Lane; that the downspouts were located about ten feet and twenty feet, respectively, east of the point where she fell; that the ice flow was approximately one and one-half feet in width; that she could see the downspouts and "could see the ice coming from there"; that both downspouts were visible to her as she sat in the alley, and she could see the bottom parts of the spouts as well as they could be seen in Plaintiff's Exhibit 2; that the ice was coming out from the "downspout" like squeezed from a toothpaste tube. She later said it was coming from the "spouts" like from a toothpaste tube, and "flowing together, these two," and that she did not know whether the ice extended past the second drainpipe, to the east end of the alley.

Plaintiff's witness, Barbara Aldrich, testified as an occurrence witness that she saw plaintiff fall on the ice. However, she knew nothing about the ice where plaintiff fell except that it was very slippery and everyone was slipping. She stated that, as far as she could remember, it was slippery all over town that day.

Dr. Paul Burgert, who was passing and stopped to treat plaintiff, said that he did not see her fall, but that there was ice in the alley in the area where she fell. He did not know whether there was a light covering of snow over the ice, or where the ice came from.

Defendant's first witness, Melville Lackie, was the president of the management company which maintained and operated the defendant's building. He testified that, to his knowledge, the building and drainage system were the same at the time of trial as at the date of the accident, and that he thought the spout closest to Bank Lane was not operational at the time of the accident. He also stated over plaintiff's objection that during the time he managed the building, from 1923 to 1968, he never received a report of anyone slipping and falling on ice in the alley, nor a complaint about the drain system on the building.

Defendant then called Robert Post who testified over plaintiff's objection that he examined the area on June 23, 1970, and discovered the supposed downspout closest to Bank Lane to be no more than a piece of tile whose opening faced directly up rather than toward the alley. He stated that the opening led nowhere and had no connection with anything inside the building, but he did not know whether there had been water coming out of the spout at one time. He was also permitted to testify as to the pitch of the alley in November, 1968, and stated that there was a slight slope from the downspout toward the center of the alley; and then down the center to the storm sewer located at the mouth

of the alley. He said that the tile closest to the sidewalk was higher than the other downspout, but he had no idea whether the physical premises were the same in November, 1968, as in February, 1966, when the accident took place.

■■ In deciding whether the directed verdict was proper, we must view all of the evidence in its aspect most favorable to the plaintiff and determine whether it so overwhelmingly favors the defendant that no verdict for the plaintiff could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill.2d 494, 510.

■■ We first determine whether the testimony of Robert Post was improperly admitted into evidence. Testimony based on an inspection after the event in question is not competent unless evidence is also introduced to show that the conditions inspected had remained unchanged in the interim. (*Paul Harris Furniture Co. v. Morse* (1956), 10 Ill.2d 28, 37; *La Salle Nat. Bank v. Feldman* (1966), 78 Ill.App.2d 363, 372.) While Post's testimony as to the drainage system of defendant's building was based on an examination made more than four years after the injury to plaintiff, a proper foundation was laid by Melville Lackie's statement that the building and drainage system remained unchanged from the time of the accident to the date of trial. Therefore, this evidence was properly admitted.

■■ However, Post's testimony concerning the slope of the alley as it appeared thirty months after the time in question was unaccompanied by evidence that conditions had remained constant, and in fact Post had no idea whether the premises had changed or not. While admittedly the nature of an alley is such that its slope would not readily vary, thirty months is too long a period for this court to presume that no change has occurred. It was thus error to admit this evidence, and it must be disregarded in determining whether the *Pedrick* rule was properly applied.

■■ Generally, a property owner is not liable for injuries sustained in a fall on snow or ice which has accumulated as the result of natural causes, but there may be liability if the snow or ice was produced artificially or unnaturally due to defendants use of the area, where it has been there long enough to charge the responsible party with notice and knowledge of the dangerous condition. *Graham v. City of Chicago* (1931), 346 Ill. 638, 641, 643, 644; *Riccitelli v. Sternfeld* (1953), 1 Ill.2d 133, 136; *Zide v. Jewel Tea Co.* (1963), 39 Ill.App.2d 217, 225, 226.

Although much testimony was heard that the spot where plaintiff fell was icy, only plaintiff stated that the ice came from the area of defendant's downspouts. Several factors cast doubt on her testimony. First, evidence was introduced that the more westerly of the two downspouts, the one closest to her, was in fact inoperative in 1966, and was no more than a

piece of tile. Thus it would have been impossible for her to have seen ice coming from both downspouts. Yet, she stated several times that ice was emerging from both spouts. Plaintiff's contention that the import of her testimony was only that ice came from the farther spout and passed the nearer one as it flowed to the place where she fell is untenable. Second, plaintiff testified that at the time of the accident she could see the bottoms of the downspouts as clearly as they appear in plaintiff's exhibit 2, showing the area with no snow on the ground. But she then stated that plaintiff's Exhibit 3 truly and accurately depicted the area at the time she fell. An examination of this Exhibit reveals that the bottoms of the spouts are covered with snow and cannot be seen. Finally, plaintiff did not know whether the ice extended past the two spouts to the east end of the alley. If it did, this would indicate that the ice was not emerging from the downspouts.

■■ While the credibility of witnesses is generally a question for the jury, this is not determinative of whether a verdict was properly directed since, even if the ice was an unnatural accumulation, plaintiff has not met the further burden of showing that this condition resulted from defendant's negligence. Plaintiff presented no testimony as to the pitch of the alley or the direction the water would have flowed had the alley been clear of snow and ice, but predicates defendant's liability on the unsupported hypothesis that the existing conditions in the alley caused the water to flow as it did and then freeze. To hold defendant liable on this theory, it would still be necessary to show that after creating the unnatural condition, defendant had actual or constructive knowledge of it and failed to take reasonable precaution to avoid injury to others.

Neither *Loyd v. City of East St. Louis et. al.* (1925), 235 Ill.App. 353, nor *Petrokas v. Atlas Furniture Co.* (1951), 344 Ill.App. 209 (Abst.), cited by plaintiff, is on point, since in both the normal flow of water from defendants' drainspouts was directly over the sidewalks, causing depressions or great accumulations of water, and the defendants knew or should have known of these conditions.

■■■ The only evidence bearing on knowledge of the condition of the drainspouts was favorable to defendant. Melville Lackie testified that in over forty years of maintaining the building, he had never received a complaint about the drainage system or a report of anyone falling on ice in the alley. The trial court did not abuse its discretion in permitting testimony of this nature. See *Hardman v. Helene Curtis Industries, Inc.* (1964), 48 Ill.App.2d 42, 51-52; *Wolczek v. Public Service Co.* (1930), 342 Ill. 482, 500, 501.

■■ Viewing all of the evidence in its aspect most favorable to plaintiff, we find that it so overwhelmingly favors defendant that no verdict for

plaintiff could ever stand. Therefore, the trial court properly directed a verdict for defendant.

█ Plaintiff also argues that the trial court erred in excluding two photographs which plaintiff testified truly and accurately depicted the scene at the time of her fall. In order to have a photograph admitted in evidence it is only necessary that the photograph be identified by a witness as a portrayal of certain facts relevant to the issue and verified by such witness on personal knowledge as a correct representation of the facts. The witness need not be a photographer, nor need he know anything of the time or condition of the taking, but he must have personal knowledge of the scene in question and testify that it is correctly portrayed by the photograph. (*Kooyumjian v. Stevens* (1956), 10 Ill.App.2d 378, 388; *Brennan v. Leshyn* (1964), 51 Ill.App.2d 132, 139.) Applying this test, the trial court erred in excluding these photographs from evidence. However, after examining the photographs, we find that they contain no indication either that the ice came from defendant's downspouts or that defendant was negligent in any way. Thus their exclusion constituted harmless error.

The judgment of the trial court is affirmed.

Judgement affirmed.

MORAN, P. J., and ABRAHAMSON, J., concur.