ALICE BAKEMAN, Plaintiff-Appellee, *v.* SEARS, ROEBUCK AND COMPANY, Defendant-Appellant.

(No. 72-257;

Second District—February 11, 1974.

*Rehearing denied March 13, 1974.*

Maynard & Brassfield, of Rockford, for appellant.

Roszkowski, Paddock & Johnson, of Rockford, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiff, Alice Bakeman, sued the defendant, Sears, Roebuck and Company, to recover damages for personal injuries allegedy suffered in a fall on a patch of ice in defendant's parking lot. Defendant appeals from a judgment of $6,000 entered on the jury verdict contending that the trial court should have directed a verdict for it at the close of plaintiff's evidence and at the close of all the evidence. In the alternative, defendant claims that various trial errors and rulings on instructions require a new trial.

Evidence presented by the plaintiff and witnesses on her behalf showed that plaintiff went to the Sears store in Rockford for Christmas shopping about 7 P.M. on December 12, 1969. Her father, Harold Bakeman, was driving, and her aunt, Louise Overton, and her niece, Kathy Bakeman, were also with her.

The large asphalt paved parking lot is to the south of the Sears store. Immediately behind the store is an east-west traffic drive. South of this are north-south lanes or aisles for parking diagonally, head-to-head. Harold Bakeman let the other three members of the party out of the car about two-thirds of the way south, down one of the north-south parking aisles and then parked the car. The weather was cold, between 10 and 27 degrees that day. Except between the heads of the parked cars, the lot was generally clear of ice and snow. There were no sidewalks or special lanes for pedestrians to walk from the parking lot to the store.

Plaintiff testified that she had been walking in the middle of the aisle and as she moved over to the right toward the back of the cars to avoid traffic she suddenly struck ice and went down. She said that there was no ice in the center of the lane or aisle, nor did she see any at the rear

of the cars where she was walking. She did not have to walk around any ice before her fall. Plaintiff testified that although there was lighting at the end of the parking lot it was not too light along the back of the cars, and that just before she fell she was walking normally, looking ahead, down and ahead. She was wearing wide-heeled shoes but not winter boots. Her leg was broken in the fall.

Plaintiff's father, who was walking behind her, observed little pieces of ice scattered along the aisle which he paid no attention to. He saw one big patch but no other patches of ice where plaintiff fell.

Plaintiff's witnesses all consistently testified that the roadway or center of the aisle was dry; that plaintiff slipped on a patch of ice about 3 car-widths or spaces from the northern end of the aisle as it borders on the east-west drive. Plaintiff's father, who parked the car, did not see her fall but hurried up afterwards and observed a piece of ice on the road where cars had been running over it. He stated that the ice was slippery, was 18 to 20 inches in the shape of kind of a triangle that went out into the road and was oval on top. Louise Overton testified that the ice patch was diagonal, approximately 15 inches, one end coming to a point and that it was flat. Kathy Bakeman, who was 14 at the time of the fall, testified that the ice on which plaintiff fell was flat ice behind the parked cars about 3 feet long and 2 feet wide, forming a triangle or rectangle. She testified that ice was running from the patch up to the snow bank which was at the head of the cars. On cross-examination she testified that she knew what the ice looked like but she didn't really know how it got there.

Plaintiff's witnesses all testified that there were piles of snow between the heads of the parked cars, and that no abrasives, sand, gravel, salt or ashes were spread on the ice or anywhere else that they could tell. The niece testified that there were no lights next to the ice patch but that she had no trouble seeing it.

Defendant's building superintendent testified that the parking lot was illuminated by three light poles per aisle approximately 14 car-widths apart with each pole containing two 550-watt mercury vapor bulbs, all of which were functioning on the night of December 12. He also testified that the lot drains from west to east, and that on the night of December 12 the condition of the parking lot was good, there not being any snow or ice to speak of. An employee of Sears who came out to put a coat around plaintiff after she had fallen testified that there was no ice on the ground in the area where plaintiff had fallen other than the patch by plaintiff and that the parking lot was clear.

Another witness for the defendant testified that he removed snow from defendant's lot on the previous heavy snow fall on December 7. He

stated that the lot was plowed in the morning of the 7th and the snow piles removed in the evening of the 7th, leaving the lot as clean as you could get it with a machine so that when he finished only a little snow was left. After the snow was shoveled the building superintendent had all of the entrances and exits sprayed with "Ice-Flo", and "Ice Melt" was spread on the east-west lane south of the store and on the main aisles.

Defendant introduced a climatological report which showed that after the 4.6 inches of snow on the 7th of December there was only .4 inches on the 9th of December and only traces on the 10th, 11th and 12th of December. The temperature from the 7th thru the 12th went above freezing on 4 days and on the 10th did not go below 35 degrees. Between the 7th and 12th of December the amount of snow on the ground in the Rockford area diminished from 5 to 3 inches. Defendant's building superintendent testified that between the 7th and 12th of December there was no snow that came down and stayed on the parking lot.

A Sears employee testified that plaintiff fell right on the border of the east-west lane at the end of the aisle. Another Sears employee testified that she took an unsigned statement from Louise Overton stating that plaintiff stepped backward and slipped at the edge of the east-west lane. Defendant presented and had admitted a photograph purporting to show a patch of ice which it claims is the one on which plaintiff slipped and which is shown in proximity to the overhead lighting.

■■ Generally no liability is incurred for injuries resulting from a fall on snow or ice which has accumulated as a consequence of natural causes where the accumulation or condition is not aggravated by the owner. (*Sims v. Block* (1968), 94 Ill.App.2d 215, 222; *Clauson v. Lake Forest Improvement Trust* (1971), 1 Ill.App.3d 1041, 1045; *Riccitelli v. Sternfeld* (1953), 1 Ill.2d 133, 136.) There is no obligation to continuously remove the tracks of other customers (*DeMario v. Sears Roebuck & Co.* (1972), 6 Ill.App.3d 46, 50); nor does the removal of snow, which may leave a natural ice formation remaining on the premises, of itself constitute negligence (*Anderson v. Davis Development Corp.* (1968), 99 Ill.App.2d 55, 58-59). There is no duty to remove natural accumulations of snow and ice even after the expiration of a reasonable length of time to charge the owner with awareness that such accumulation or condition constitutes a menace. *Foster v. George J. Cyrus & Co.* (1971), 2 Ill.App.3d 274, 277-279.

■■ Liability may be incurred, however, when snow or ice is not produced or accumulated from natural causes, but as a result of artificial causes or in any unnatural way, or by defendant's own use of the area concerned and creation of the condition, and where the condition has been there long enough to charge the responsible party with notice and

knowledge of the dangerous condition. *Fitzsimons v. National Tea Co.* (1961), 29 Ill.App.2d 306, 318; *Sims v. Block* (1968), 94 Ill.App.2d 215, 222; *Clauson v. Lake Forest Improvement Trust* (1971), 1 Ill.App.3d 1041, 1045.

■■ The particular question before us is whether the trial court properly denied defendant's motion for a directed verdict. A verdict should be directed only if the evidence, when viewed in its aspect most favorable to the plaintiff, so overwhelmingly favors the defendant that a verdict for the plaintiff could never stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill.2d 494, 510.) Plaintiff's theory of the case is that the ice patch upon which she slipped and fell was formed by melting snow from piles shoveled between the heads of the parked cars when defendant plowed its lot. The melted snow then allegedly refroze about a car-length to the west where the backs of the parked cars would be.

Plaintiff's witnesses all testified that on the night of the accident snow piles were at the heads of the parked cars along the aisle by which the plaintiff fell. Defendant's witness who regularly plowed defendant's parking lot testified that all piles of snow at the last prior shoveling were removed on December 7 and that the lot was clear on the date of the accident. Two other defense witnesses also testified that defendant's parking lot was clear on the night of the accident. The photograph of the patch of ice which defendant argues depicted the scene of the accident tends to support the testimony of defendant's witnesses and to dispel the theory that the patch of ice upon which plaintiff slipped originated from the claimed snow piles. Whether the picture was of the exact scene, however, was a matter in dispute. Plaintiff's witnesses all consistently testified the accident occurred at a spot approximately three car-widths to the south of the location of the ice patch and surrounding area depicted in defendant's photograph. We conclude that the existence of snow piles on defendant's lot at the time of the accident as claimed by the plaintiff was an issue dependent on credibility for its outcome and therefore one for the jury to have decided.

Conceding that the existence of the snow piles was a jury question, defendant contends that because the parking lot drained from west to east it was physically impossible for snow to melt from piles along the aisle where plaintiff fell and drain from east to west for a distance of more than a car-length to refreeze at the point of occurrence. With this contention we must agree.

The climatological report showed alternate thawing and freezing temperatures which would be consistent with plaintiff's theory of the case. Yet except for the patch of ice upon which plaintiff slipped all witnesses who testified about the condition of defendant's parking lot on

the night of the accident stated the lot or aisle was generally free and clear of ice patches and that no other patches of ice were noticeable. If piles of snow up to the hoods of the cars existed all along the parking aisle of defendant's lot other patches of ice should have formed to the west of the snow piles as plaintiff claims the one in question did. (See *Fitzsimons v. National Tea Co.* (1961), 29 Ill.App.2d 306.) Except for Kathy Bakeman none of the witnesses who testified about the nature of the patch of ice upon which plaintiff slipped indicated it was connected with other snow and ice. Kathy Bakeman testified that the patch was 2 x 3 feet in dimension and shaped like a triangle with ice running up to the snow bank at the heads of the parked cars. She was 14 at the time of the fall and stated she did not know how the ice got where it did. Even considering that the credibility of her testimony was for the jury to decide, we cannot reasonably conclude that the patch of ice was formed by snow melting and then flowing in the opposite direction of the lot's drainage. We can infer from Kathy Bakeman's testimony that part of the patch of ice upon which plaintiff fell melted and in the process of trickling or flowing toward the snow bank in conformity with the pitch of the lot, the water refroze when the weather turned cold; or we could infer the patch including the ice running to the snow bank formed naturally from prior snowfall or snow remaining after shoveling (see *Byrne v. Catholic Bishop of Chicago* (1971), 131 Ill.App.2d 356, 360; *Anderson v. Davis Development Corp.* (1968), 99 Ill.App.2d 55, 58); or from ice falling off of cars using defendant's lot (See *DeMario v. Sears Roebuck & Co.* (1972), 6 Ill.App.3d 46, 50). But in the absence of any evidence showing that the pitch of defendant's lot in the area of the ice formation in question was not in conformity with the general slope of the lot, we cannot infer that the patch of ice in question could have been formed by melting snow running uphill. (*Cf. Zide v. Jewel Tea Co.* (1963), 39 Ill.App.2d 217; *Clauson v. Lake Forest Improvement Trust* (1971), 1 Ill.App.3d 1041.) Plaintiff had the burden of affirmatively showing that the origin of ice upon which she slipped was unnatural or caused by defendant. In the absence of such a showing, this court will not speculate on possible circumstances which might have existed to support plaintiff's theory of recovery. *Byrne v. Catholic Bishop of Chicago* (1971), 131 Ill.App.2d 356, 358-359.

■■■ Additionally we note that defendant undertook reasonable precautions in the care of its lot against snow and ice hazards. The lot was shoveled whenever heavy snowfalls occurred. Entrances, exits and main aisles were sprayed with ice melting substances. The large lot was periodically examined by defendant's building superintendant, and on the night of plaintiff's fall the aisles where cars drove and pedestrians

walked were generally free and clear of ice and snow. If a business owner has exercised reasonable caution to prevent ice from accumulating on his property he normally will not be held liable, and such owner should not be placed in the position of an absolute insurer of the safety of its business invitees. (*Zide v. Jewel Tea Co.* (1963), 39 Ill.App.2d 217, 222-223; *DeMario v. Sears, Roebuck & Co.* (1972), 6 Ill.App.3d 46, 49.) It seems unreasonable to us to require defendant, once having effectively cleared its lot of ice and snow from the main traffic and pedestrian flows, to make sure there remain or form no unnatural accumulations that may have been caused by it, regardless of how small and insignificant these accumulations might be. Rather, not requiring defendant to engage in minute inspection for and removal or amelioration from its large lot of small isolated patches of ice such as was involved here (contrast *Fitzsimons v. National Tea Co.* (1961), 29 Ill.App.2d 306), seems to this court the sounder approach since the law imposes no duty upon defendant to clear its lot in the first place, and does not require it to remove all snow or ice when it does clear its lot. *Byrne v. Catholic Bishop of Chicago* (1971), 131 Ill.App.2d 356; *Anderson v. Davis Development Corp.* (1968), 99 Ill.App.2d 55, 58.

■■ We therefore reverse the judgment below and remand with directions to set aside the verdict and judgment entered thereon and to enter judgment for the defendant, Sears, Roebuck and Company, a corporation. Reaching this conclusion, we do not consider the remaining claims of error advanced by defendant.

Reversed and remanded with directions.

T. MORAN, P. J., and GUILD, J., concur.