ELLEN BANSCH, Plaintiff-Appellant, *v.* JAMES DONNELLY, d/b/a James Shoe Store, *et al.*, Defendants-Appellees.

Third District    No. 78-104

Opinion filed November 7, 1979.

Louis E. Olivero, of Peru, for appellant.

Robert M. Hansen and R. J. Lannon, Jr., both of Herbolsheimer, Lannon, Henson and Duncan, P. C., of La Salle, for appellees.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Plaintiff Ellen Bansch commenced this action by filing a two-count complaint in the circuit court of La Salle County against the defendant James Donnelly, doing business as James Shoe Store, and Roger Pierson. Count I of the complaint charged defendant Donnelly with negligence occasioning plaintiff's personal injuries resulting from her fall on the sidewalk in front of his store and count II similarly charged defendant Pierson as owner of the store building. The trial court granted motions for judgment notwithstanding the verdict in favor of defendant Donnelly and for a directed verdict in favor of defendant Pierson. Plaintiff contends on appeal that the court erred in granting defendant's motions and refusing to allow her to call the store manager as an adverse witness.

On January 14, 1975, plaintiff and her husband went to the James Shoe Store in Princeton, Illinois, to do some personal shopping. While in the store, they examined some merchandise but did not buy anything. As they were leaving, plaintiff apparently slipped on a patch of ice on the sidewalk in front of the store and severely injured her right wrist. There were no witnesses to the fall and no one noticed the ice patch until plaintiff's husband saw it upon assisting his wife after her fall. Except for this one patch of ice, the sidewalk in front of the store was completely free of ice or snow, as were the other streets and sidewalks in Princeton. The weather was clear at the time of the accident and there had been no measurable precipitation for the previous four days.

The front of James Shoe Store has a facade of corrugated paneling surrounded by a border that extends outward three or four inches. There is also a center panel and lamp bracket which extend outward four to six

inches and eight to 10 inches respectively. The patch of ice was located 12 to 18 inches further from the front of the store than the furthest point of the facade.

■■■ The law governing determinations of liability in situations as this is well stated in *Bakeman v. Sears, Roebuck and Co.* (1974), 16 Ill. App. 3d 1065, 1068-69, 307 N.E.2d 449, 452:

> "Generally no liability is incurred for injuries resulting from a fall on snow or ice which has accumulated as a consequence of natural causes where the accumulation or condition is not aggravated by the owner. (*Sims v. Block* (1968), 94 Ill. App. 2d 215, 222, 236 N.E.2d 572; *Clauson v. Lake Forest Improvement Trust* (1971), 1 Ill. App. 3d 1041, 1045; *Riccitelli v. Sternfeld* (1953), 1 Ill. 2d 133, 136.)
>
> * * *
>
> Liability may be incurred, however, when snow or ice is not produced or accumulated from natural causes, but as a result of artificial causes or in an unnatural way, or by defendant's own use of the area concerned * * *, and where the condition has been there long enough to charge the responsible party with notice and knowledge of the dangerous condition. *Fitzsimons v. National Tea Co.* (1961), 29 Ill. App. 2d 306, 318; *Sims v. Block* (1968), 94 Ill. App. 2d 215, 222; *Clauson v. Lake Forest Improvement Trust* (1971), 1 Ill. App. 3d 1041, 1045."

Plaintiff's theory of the case is that the ice patch was an unnatural accumulation produced as follows: The defendants changed the front of the building and the changed facade altered the natural course of the flow of water. The new facade would trap precipitation which would freeze. Because the building is located on the east side of the street, the facade would be warmed by the noonday sun from the west, causing a melting of whatever ice was trapped. The water would then drip from those portions of the facade, panel, or light fixture where the ice was trapped to the sidewalk below, where it would refreeze into patches of ice.

Preliminary to our review of the evidence offered in support of this theory is our consideration of plaintiff's contention the trial court's refusal to permit her calling Robert Lanier, the store manager, as an adverse witness prejudicially precluded her from impeaching his testimony at trial with a statement given to an insurance adjuster five days after the accident. The relevant statutory authority is section 60 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60) which provides in pertinent part:

> "Upon the trial of any case any party thereto * * * or the officers, directors, managing agents or foreman of any party to the

action, may be called and examined as if under cross-examination at the instance of any adverse party. ＊ ＊ ＊"

At the time of trial, Mr. Lanier was not the manager of defendant Donnelly's business, Mr. Donnelly having sold the business to his son more than a year prior to trial. Although Mr. Lanier remained as manager of the store, he was no longer employed as a managing agent of a party to this action.

■■ In *Bituminous Casualty Corp. v. Harrisburg* (1942), 315 Ill. App. 243, 42 N.E.2d 971, plaintiff sued defendant city to recover premiums due on a workman's compensation insurance policy, and the city counterclaimed for the unearned portion of an advance deposit on the premiums. At trial, plaintiff called the mayor of the city during the policy period as an adverse witness. In affirming the refusal to allow this practice, the court held that the language of the statute contemplated the witness' status at the time of the litigation rather than at the time the cause of action accrued. Plaintiff cites *Frisch v. International Harvester Co.* (1975), 33 Ill. App. 3d 507, 338 N.E.2d 90, in support of her position. *Frisch* involved the unusual situation where eight years had elapsed from the filing of the action to the time the witness was called and where the witness was employed when the trial began but retired the day before he was called to testify. As no such circumstances are here present, we find *Frisch* inapposite. The trial court properly precluded Mr. Lanier's examination as an adverse witness.

■■ Having determined this evidentiary question we turn to the ultimate issue of whether the trial court erred in granting defendants' motions for a directed verdict and judgment notwithstanding the verdict. The applicable standard was set forth in *Pedrick v. Peoria and Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14:

"In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

Our review of the evidence indicates that this is such a case.

The evidence reveals that the defendants did indeed change the front of the building, but plaintiff offered no proof that the facade altered the natural flow of water. The uncontradicted evidence was that the roof sloped from the front to the back of the building and the facade did not alter this slope to reverse the flow of water. There was likewise no evidence that the facade itself trapped precipitation. It was established that when it would rain in cold weather, water would drip from the front of the building and freeze on the sidewalk below but this weather

condition did not exist on the day of the accident. Furthermore the weather records of the city of Princeton established the last rain was on January 10, 1975, when the temperature was mainly in the 50's, with six hourly readings in the 40's and a reading at midnight of 38 degrees. Plaintiff presented no evidence that dripping would have continued for any length of time nor that such dripping formed the patch of ice in question.

■■ Plaintiff had the burden of showing that the origin of the patch of ice upon which she apparently slipped was unnatural or caused by defendant. In the absence of such a showing, this court will not enter into speculation and conjecture as to possible circumstances which might have existed to support her theory of recovery. (See *Bakeman v. Sears, Roebuck & Co.* (1974), 16 Ill. App. 3d 1065, 307 N.E.2d 449, 453; *Byrne v. Catholic Bishop of Chicago* (1971), 131 Ill. App. 2d 356, 266 N.E.2d 708, 711.) Plaintiff additionally failed to meet her burden of showing the patch had been present long enough to charge defendants with notice and knowledge of the condition. *Bakeman v. Sears, Roebuck & Co.* (1974), 16 Ill. App. 3d 1065, 307 N.E.2d 449.

Plaintiff also contends that defendant Donnelly assumed the duty to inspect and maintain the sidewalk where the ice patch formed. This theory was not advanced at trial, and this issue was not presented to nor considered by the trial court (see *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417, 420) nor included in plaintiff's complaint (see *Fugate v. Sears, Roebuck & Co.* (1973), 12 Ill. App. 3d 656, 299 N.E.2d 108, 123), and therefore we do not reach its consideration on appeal.

Accordingly, the order of the circuit court of La Salle County granting defendants' motions is affirmed.

Affirmed.

STENGEL and SCOTT, JJ., concur.